[No. D056898. Fourth Dist., Div. One. May 31, 2011.]

MICHAEL C. BEHNKE, Plaintiff and Appellant, v.
STATE FARM GENERAL INSURANCE COMPANY, Defendant and
Respondent.

1444

## COUNSEL

English & Gloven, Donald A. English and Jeffrey E. Flynn for Plaintiff and Appellant.

Hughes & Nunn, Randall M. Nunn, E. Kenneth Purviance; Horvitz & Levy, Mitchell C. Tilner and Curt C. Cutting for Defendant and Respondent.

## OPINION

**NARES, J.**—This breach of contract, insurance bad faith, and fraud action brought by plaintiff Michael C. Behnke against his residential property insurer—defendant State Farm General Insurance Company (State Farm)—arose from an attorney fees dispute between State Farm and the law firm of English & Gloven, which Behnke had selected as his independent *Cumis* counsel[1] to defend him against a third party lawsuit. In his fee agreement with English & Gloven, Behnke agreed to be personally liable for the firm's fees in the event State Farm failed to make full and timely payments. After objecting that English & Gloven's fees were excessive and attempting to replace the firm as Behnke's independent counsel, State Farm allowed

---

[1] The term *"Cumis* counsel" derives from *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 375 [208 Cal.Rptr. 494] (*Cumis*), in which the court held that "where there are divergent interests of the insured and the insurer brought about by the insurer's reservation of rights based on possible noncoverage under the insurance policy, the insurer must pay the reasonable cost for hiring independent counsel by the insured." The terms *"Cumis* counsel" and "independent counsel" are synonymous. (*Assurance Co. of America v. Haven* (1995) 32 Cal.App.4th 78, 86, fn. 7 [38 Cal.Rptr.2d 25].)

English & Gloven to continue representing Behnke and allegedly promised at a January 2004 meeting to pay all of English & Gloven's fees that State Farm had not paid as of the time of the meeting. State Farm eventually paid $50,000 to settle the underlying lawsuit against Behnke. By that time, English & Gloven had billed State Farm a total of about $199,000 in fees and costs. The attorney fees dispute arose when State Farm paid $140,000 to English & Gloven but refused to pay the remaining $59,000. Meanwhile, Behnke signed a promissory note in the amount of $127,000 in favor of English & Gloven secured by a deed of trust on his home. State Farm obtained an order compelling mandatory binding arbitration under Civil Code[2] section 2860, subdivision (c) (hereafter section 2860(c)), and the arbitrator reduced the disputed $59,000 attorney fees claim by $16,000 to $43,000, which the arbitrator awarded to English & Gloven with interest. English & Gloven foreclosed on the deed of trust given by Behnke, and State Farm paid English & Gloven's reduced attorney fees claim with interest.

Behnke appeals from a judgment entered in favor of his residential property insurer, defendant State Farm, after the trial court (1) sustained without leave to amend State Farm's general demurrer to the fraud, promissory fraud, and equitable estoppel causes of action asserted in Behnke's second amended complaint and (2) granted summary judgment in favor of State Farm on Behnke's remaining claims for breach of contract, bad faith denial of insurance benefits, and punitive damages.

Behnke contends the court erred by (1) sustaining without leave to amend State Farm's demurrer to the third cause of action for fraud, fourth cause of action for promissory fraud, and fifth cause of action for equitable estoppel and (2) granting State Farm's summary judgment motion as to Behnke's remaining first cause of action for breach of contract, second cause of action for bad faith denial of insurance policy benefits, and claim for punitive damages. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

A. *Behnke's State Farm Policy and the Action Against Him Brought by Maria Castaneda*

State Farm issued to Behnke a rental dwelling policy (the policy) for a condominium located in San Diego. Behnke sold the property to Maria

---

[2] All further statutory references are to the Civil Code unless otherwise specified.

[3] Our summary of the factual background in this case is derived primarily from the factual allegations set forth in Behnke's second amended complaint and the undisputed material facts set forth in the separate statements submitted by the parties in connection with the summary judgment proceeding. Our summaries of the demurrer and summary judgment proceedings are set forth in the discussion section of this opinion.

Castaneda, who made a third party claim against his State Farm policy after she discovered mold in the condominium. Castaneda later brought suit against Behnke and others (hereafter occasionally referred to as the *Castaneda* action), alleging Behnke concealed the mold by painting over it before he sold her the property.

### B. *Tender of Behnke's Defense and His Hiring of English & Gloven*

In February 2003 Behnke tendered to State Farm the defense of the *Castaneda* action, and he retained the law firm of English & Gloven as his defense counsel. The retainer agreement, dated February 20, 2003, provided that English & Gloven would defend Behnke, who would pay English & Gloven's fees at a negotiated hourly rate if State Farm did not provide him a defense, and that, if State Farm provided a defense and promptly paid all of English & Gloven's invoices "without offset or discount," Behnke would not be responsible for the attorney fees. The retainer agreement also provided that, if State Farm failed to make full and timely payments, Behnke would be required to pay an hourly rate of $295 for work performed by Donald English (English) and $220 per hour for work performed by Jeffrey Flynn. State Farm was not a party to the written retainer agreement between Behnke and English & Gloven.

### C. *State Farm's Agreement to Defend Behnke Under a Reservation of Rights*

In a letter to English & Gloven dated February 27, 2003, State Farm stated that it accepted the tender of Behnke's defense of the *Castaneda* action subject to the reservation of rights outlined in its letter to Behnke (discussed, *post*) and that it agreed to pay English & Gloven $160 per hour to defend him. According to Behnke's second amended complaint against State Farm, which is the subject of this appeal, State Farm allegedly agreed to pay an unspecified higher rate ("English & Gloven's normal hourly billing rates") if State Farm did not promptly remit timely payments to English & Gloven. State Farm's letter to English & Gloven confirming the retention, however, did not reference any such alleged agreement. State Farm paid English & Gloven's invoices from February through June 2003, during which time the invoices averaged about $5,300 per month.

In that letter to English & Gloven, State Farm accepted Behnke's choice of English & Gloven as his defense counsel subject to the provisions of section 2860, which limits the fees an insurer is obligated to pay for *Cumis* counsel and mandates final and binding arbitration of any fee disputes. (§ 2860(c).)

In its letter to Behnke dated February 28, 2003, State Farm informed him that it agreed to defend him in the *Castaneda* action, but that it was reserving

its right to deny coverage on various grounds. State Farm reserved its right to deny coverage on the ground Behnke's concealment of the mold was not an "occurrence" within the meaning of the policy, which defined "occurrence" as an "accident." State Farm also reserved the right to deny coverage based on an exclusion that applied to any personal injury or property damage that was intended or expected by Behnke as the insured.

### D. State Farm's Objection That English & Gloven's Bills Were Excessive

In late November 2003 State Farm wrote to English & Gloven objecting that its bills were "grossly excessive." State Farm's letter stated that from March 31 through October 31 of 2003, English & Gloven had billed for 636.5 hours, for a total of more than $91,000 in fees, even though the case was still in its early stages and only four nonexpert depositions had been taken.

### E. State Farm's Modification of Its Reservation of Rights and Notice to Behnke that English & Gloven Would Be Replaced

State Farm took steps to retain new defense counsel. State Farm team manager Sharon Handlin decided to modify State Farm's reservation of rights to eliminate any coverage dispute that could give rise to a right to *Cumis* counsel, and on December 17, 2003, she sent an amended reservation of rights letter to Behnke informing him he that was no longer entitled to independent counsel under section 2860 and that State Farm was advising English & Gloven to transfer Behnke's defense to attorney Joseph J. Barr.

### F. English & Gloven's Resistance to the Replacement of Defense Counsel in the Castaneda Action and Its January 2004 Meeting with State Farm

English & Gloven disputed State Farm's position that Behnke was no longer entitled to independent counsel. In a letter to State Farm dated December 23, 2003, English & Gloven maintained that State Farm was still obligated to pay English & Gloven as Behnke's independent counsel despite State Farm's amended reservation of rights letter.

English & Gloven continued to represent Behnke as defense counsel in Castaneda's lawsuit against him and informed State Farm that Behnke would not accept Barr as his sole defense counsel unless State Farm agreed to withdraw all reserved rights.

At a meeting held on January 14, 2004 (the January 2004 meeting), English & Gloven met with Handlin and State Farm's assigned claims

adjuster, Ted Krempa, to discuss Behnke's defense. According to the allegations in Behnke's second amended complaint, Handlin and Krempa agreed on State Farm's behalf that (1) Behnke was still entitled to independent counsel, even under State Farm's amended reservation of rights; (2) State Farm would continue to use English & Gloven as Behnke's defense counsel in the *Castaneda* action; (3) State Farm and English & Gloven would pursue a litigation and settlement strategy that Handlin, Krempa and English & Gloven all agreed to at that meeting; (4) Barr would perform no additional work on behalf of Behnke in the *Castaneda* action; and (5) Handlin "would arrange for the payment of English & Gloven's attorney's fees and costs which had not been paid as of that date."

> G. *State Farm's Payment of $50,000 to Settle Castaneda's Claims Against Behnke*

In March 2004 the underlying *Castaneda* action was mediated, and the parties reached a settlement under which State Farm agreed to pay $50,000 to settle the claims against Behnke. The settlement was ultimately finalized in mid-June 2004.

By the time the *Castaneda* case ended, English & Gloven had billed State Farm a total of about $199,000 for fees.

> H. *State Farm's Payment of $140,000 to English & Gloven, Its Refusal to Pay an Additional $45,000, and English & Gloven's Refusal to Arbitrate the Fee Dispute*

Kenneth Greenfield, an attorney hired by State Farm to evaluate the necessity and reasonableness of fees and costs incurred by English & Gloven in Behnke's defense, opined that the amounts billed by English & Gloven in excess of $140,000 were unnecessary and unreasonable.

In June 2004 State Farm informed English & Gloven that State Farm would be willing to pay English & Gloven a total of $140,000 for English & Gloven's defense of Behnke. State Farm provided English & Gloven with a check in the amount of about $104,000, which, combined with the roughly $36,000 State Farm had already paid it, brought to $140,000 the total amount State Farm paid to English & Gloven.

English & Gloven, however, claimed an additional $45,000.[4] State Farm repeatedly invited English & Gloven to arbitrate the dispute over the remaining $45,000 claimed by English & Gloven, which refused to participate in arbitration.

---

[4] By the time the arbitration hearing was held in March 2008, the disputed amount of fees claimed by English & Gloven had increased to about $59,000.

I. *Behnke's Promissory Note to English & Gloven, Secured by His Home*

In February 2005 Behnke signed a promissory note in favor of English & Gloven in the amount of $127,606.14. The amount of the promissory note included the fees English & Gloven had billed for Behnke's defense in the lawsuit filed by Castaneda, the fees it billed Behnke for representing him in his coverage dispute with State Farm, and $55,000 in fees billed for other matters. Behnke also signed a deed of trust on his home to secure his obligations to English & Gloven.

J. *English & Gloven's Lawsuit Against State Farm on Behnke's Behalf*

In February 2006 English & Gloven brought this breach of contract and tort action against State Farm on Behnke's behalf.

K. *State Farm's Motion to Compel Arbitration*

In January 2007 State Farm's motion to compel arbitration of the fee dispute under section 2860(c) was granted.

L. *Behnke's Bankruptcy, the Discharge of His Debt, and English & Gloven's Foreclosure on the Deed of Trust*

In April 2007 while this action was pending, Behnke filed a petition for chapter 7 bankruptcy. Behnke's debt to English & Gloven for its services was discharged in the bankruptcy action. After relief from stay was granted, English & Gloven foreclosed on its deed of trust in order to protect its security interest in Behnke's home.

M. *Arbitration Award*

In early March 2008 the fee dispute at issue in this case was arbitrated before Thomas E. Sharkey, Esq. (the arbitrator), who, in his July 2008 interim arbitration award, determined that English & Gloven's claim for fees, which (as already noted) had increased to $58,907.64, should be reduced by $16,000 to $42,907.64. The arbitrator found that some of the time English & Gloven had spent on the matter was "excessive in the sense that the benefit to the case was outweighed by the cost charged for that work." The arbitrator later corrected the interim arbitration award by awarding prejudgment interest.

N. *State Farm's Payment of the Confirmed Arbitration Award*

In September 2008 the court confirmed the arbitrator's corrected award. State Farm paid to English & Gloven the full amount it owed under that award ($42,907.64 plus prejudgment interest in the amount of $9,290.40, for a total of $52,198.04).

## DISCUSSION

### I. *STATE FARM'S GENERAL DEMURRER*

Behnke first contends the court erred in sustaining without leave to amend State Farm's demurrer to the third cause of action for fraud, fourth cause of action for promissory fraud, and fifth cause of action for equitable estoppel asserted in his second amended complaint. We reject this contention.

#### A. *Applicable Legal Principles*

##### 1. *General demurrers*

■ "A demurrer tests the legal sufficiency of factual allegations in a complaint." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 42 [96 Cal.Rptr.2d 354].) A general demurrer challenges the legal sufficiency of the complaint on the ground it fails to state facts sufficient to constitute a cause of action. (See Code Civ. Proc., § 430.10, subd. (e).)

Whether a complaint states facts sufficient to constitute a cause of action is a question of law. (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497 [57 Cal.Rptr.2d 406].) We therefore review de novo the sustaining of a general demurrer. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].)

When a general demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

##### 2. *Elements of fraud and promissory fraud*

■ " 'THE NECESSARY ELEMENTS OF FRAUD ARE: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance);

(4) justifiable reliance; and (5) resulting damage.' " (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239 [44 Cal.Rptr.2d 352, 900 P.2d 601].)

█ " 'Promissory fraud' is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 [49 Cal.Rptr.2d 377, 909 P.2d 981].) The elements of promissory fraud (i.e., of fraud or deceit based on a promise made without any intention of performing it) are (1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise. (*Muraoka v. Budget Rent-A-Car, Inc.* (1984) 160 Cal.App.3d 107, 119 [206 Cal.Rptr. 476].)

B. *Background*

1. *Order sustaining, with leave to amend, State Farm's general demurrer to Behnke's fraud, promissory fraud, and equitable estoppel claims alleged in his first amended complaint*[5]

a. *First amended complaint*

In June 2008 Behnke filed his first amended complaint, which asserted claims against State Farm for breach of contract, bad faith denial of insurance policy benefits, fraud, promissory fraud, equitable estoppel, and punitive damages. Behnke alleged that State Farm "intentionally manipulated" its February 28, 2003 reservation of rights letter in a "fraudulent attempt to strip [Behnke] of his legal right to independent counsel of his own choosing." He also alleged (among other things) that at the January 2004 meeting, State Farm promised—without any intention of performing and with intent to mislead—that it would pay English & Gloven all attorney fees and costs unpaid as of the date of that meeting; Behnke and his agent English & Gloven reasonably and justifiably relied upon these representations, and Behnke was damaged by his reliance on State Farm's representations and failure to perform.

---

[5] Although this appeal challenges the court's decision to sustain State Farm's general demurrer to Behnke's *second* amended complaint, we summarize the proceedings concerning State Farm's demurrer to the *first* amended complaint because, as we shall discuss, the court's confirmed tentative ruling on the demurrer to the second amended complaint expressly refers to the prior demurrer proceedings ("[t]he other remaining allegations in the [fraud, promissory fraud, and equitable estoppel] causes of action have been addressed at the prior demurrer hearing").

### b. *State Farm's demurrer to the first amended complaint*

State Farm brought a general demurrer challenging the legal sufficiency of the factual allegations supporting the fraud, promissory fraud, and equitable estoppel claims asserted in the first amended complaint. State Farm argued that (1) its amendment of the reservation of rights letter provided no basis for the fraud claim; (2) the arbitration award disposed of Behnke's contentions about the January 2004 meeting; and (3) Behnke's estoppel theory was precluded by the arbitration award, and his equitable estoppel claim failed because there is no such cause of action.

At the hearing on the demurrer, English & Gloven's counsel (English) acknowledged that State Farm's withdrawal of the reservation of rights at the January 2004 meeting was presented to the arbitrator, but asserted "it was not presented for adjudication." He argued that at the January 2004 meeting, State Farm waived its rights to arbitrate the fee dispute under section 2860.

State Farm's counsel, Kenneth Purviance, responded that the alleged waiver of State Farm's rights under section 2860 was "laid out" in English & Gloven's arbitration brief[6] and was "in front of the arbitrator" along with the amendment of State Farm's reservation of rights, the January 2004 meeting, and State Farm's payment of $140,000 to English & Gloven for fees and costs incurred in defending Behnke in the *Castaneda* action. Purviance argued that these issues were "bound up in the arbitration in determining if [English & Gloven] ha[d] a defense to [State Farm's section 2860] claim about the reasonableness of the fee[s]" and that the arbitrator had jurisdiction over those issues and "came out with a ruling" on the "issues, such as waiver, that [English & Gloven] chose to put forth in the arbitration."

After hearing oral arguments and taking the matter under submission, the court sustained State Farm's demurrer with leave to amend as to the fraud, promissory fraud, and equitable estoppel claims. The court's minute order indicated that Behnke had failed to state facts showing he had suffered damages "outside of the *Cumis* [counsel] fee dispute to support a claim for fraud."

---

[6] In its arbitration brief, English & Gloven argued that the issues presented in the section 2860(c) arbitration included its defense that "the application of the doctrines of *waiver* and estoppel preclude[d] State Farm from prevailing in this proceeding" (italics added). English & Gloven also asserted in its arbitration brief that "[t]his evidence establishes that State Farm has *waived* and/or is estopped from objecting to all legal services and fees associated therewith." (Italics added.)

2. *Order sustaining, without leave to amend, State Farm's general demurrer to Behnke's fraud, promissory fraud, and equitable estoppel claims alleged in his <u>second</u> amended complaint*

a. *State Farm's second amended complaint*

Behnke filed his second amended complaint in late August 2008, again alleging claims for breach of contract, bad faith denial of insurance policy benefits, fraud, promissory fraud, equitable estoppel, and punitive damages.

b. *State Farm's demurrer to the second amended complaint*

State Farm responded by bringing another general demurrer challenging the legal sufficiency of the amended factual allegations supporting the fraud, promissory fraud, and equitable estoppel claims. Noting that the plain language of section 2860(c) provides that "[a]ny dispute concerning attorney's fees not resolved by these methods shall be resolved by final and binding arbitration . . . ," State Farm argued that "[t]he theory that State Farm agreed to pay 'normal fees' if its payments were untimely constitutes a dispute over *Cumis* fees" that was subject to the mandatory arbitration provision of section 2860(c); and thus Behnke was not permitted to "circumvent the [section] 2860(c) limit on *Cumis* fees, or to avoid the final and binding nature of the arbitration award, by concocting strained and convoluted fraud theories in this action."

State Farm also argued that Behnke's fraud allegations were still deficient because the allegations in paragraphs 22 and 66 of the second amended complaint that State Farm agreed in the original agreement to pay English & Gloven's "normal rates" if its payments were untimely, was an insufficient basis for a fraud action because (1) nothing in the amended pleading suggested that State Farm agreed to pay *excessive* fees or promised to never contest English & Gloven's fees; (2) even if there were such an agreement, the firm's excessive billing excused payment because a legitimate fee dispute was pending; and (3) Behnke "ha[d] not and [could] not sufficiently plead the elements of fraud of falsity, knowledge of falsity, intent to induce reliance, actual reliance and resulting damage." Thus, State Farm argued, "No fraud claim [could] be based on State Farm's alleged agreement to pay *Cumis* fees."

Regarding Behnke's allegation that State Farm "manipulated" its reservation of rights, State Farm argued that (1) Behnke had "fail[ed] to specifically plead what false representation was made in the amended reservation, and how he relied on that representation" and (2) merely amending a reservation of rights was not actionable because "[n]othing in California law prohibits

insurers from withdrawing a reservation of rights, in whole or in part, and thereby eliminating a conflict which requires independent counsel." State Farm also asserted that Behnke could not show reliance on the amended reservation of rights or resulting damage.

Finally, regarding the representations allegedly made on State Farm's behalf at the January 2004 meeting, State Farm argued that Behnke could not show intent to induce reliance, and reliance and damage. It asserted that Behnke "had retained [English & Gloven] and agreed to pay its higher hourly rate long before the January [2004] meeting"; he "did not change his legal relationships in reliance on the January [2004] meeting"; and his purported obligation to pay English & Gloven's "normal" rates was "the result of the terms of his retention agreement" and not the result of reliance on State Farm's representations at the meeting.

### i. *Tentative ruling*

In its written tentative ruling, the court indicated it intended to sustain State Farm's demurrer without leave to amend as to all three causes of action. Specifically, after quoting relevant provisions of section 2860(c),[7] the tentative ruling stated:

"The fee dispute between English & Gloven and State Farm was submitted to binding arbitration. Any dispute concerning the calculation of attorneys' fees and the amounts owed were to be adjudicated by the arbitrator. Behnke contends the arbitration resolved only the issue of 'reasonable' attorney's fees, but that is not what [section] 2860 says. The statute states, '[a]ny dispute concerning attorney's fees . . . shall be resolved by final and binding arbitration . . .' and does not include the word 'reasonable' much less describe the fees. State Farm[']s obligation to pay attorneys' fees to English & Gloven, incurred in the [*Castaneda*] case, either directly or indirectly through Behnke has been discharged and cannot be re-litigated in this action.

---

[7] Section 2860(c) provides in full: "When the insured has selected independent counsel to represent him or her, the insurer may exercise its right to require that the counsel selected by the insured possess certain minimum qualifications which may include that the selected counsel have (1) at least five years of civil litigation practice which includes substantial defense experience in the subject at issue in the litigation, and (2) errors and omissions coverage. *The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended.* This subdivision does not invalidate other different or additional policy provisions pertaining to attorney's fees or providing for methods of settlement of disputes concerning those fees. *Any dispute concerning attorney's fees not resolved by these methods shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute.*" (Italics added.)

"Further, Behnke's claims for fraud and equitable estoppel are insufficiently pled in the Second Amended Complaint. [Citations.] The additional fees now sought by Behnke do not result from actual or justifiable reliance on any of the alleged misrepresentations made by State Farm. The Second Amended Complaint does not include anything Behnke did or did not do because he relied on State Farm's statements on January 14, 2004. English & Gloven may have foregone a motion to withdraw, but the firm is not the Plaintiff in this action and the fees owed to English & Gloven are no longer at issue.

"The other remaining allegations in the [fraud, promissory fraud, and equitable estoppel] causes of action have been addressed at the prior demurrer hearing. The court granted Behnke an opportunity to [amend] these causes of action to state a claim against State Farm. Behnke has failed to do so. State Farm's demurrer is sustained without leave to amend."

### ii. *Hearing and ruling*

At the hearing on State Farm's demurrer, English asserted on behalf of English & Gloven that there was an issue "whether State Farm made a promise to [English & Gloven] that [State Farm] would pay all fees at a time when they knew there was a dispute about the amount of the fees."

English also claimed that "[t]he issue of waiver was not presented to [the arbitrator]" and indicated that the court needed to determine whether State Farm waived its rights under section 2860 during the January 2004 meeting. When the court responded, "But you did arbitrate [the waiver issue]," English replied, "We didn't argue waiver."

English argued that "here we have a fraud claim that has five or six different aspects to it, including damages, that are independent and separate from the [section] 2860 reasonableness issue. Those would seem . . . to go to the jury, because we're at a pleading stage and we need to go forward." When English argued that section 2860 did not "resolve[] everything," the court agreed. The court, however, disagreed with English's assertion that the second amended complaint had "articulated all elements" of Behnke's fraud claims.

Regarding the element of justifiable reliance, the court asked English, "What is it that [Behnke] did that he wouldn't have done . . . or that he didn't do and could have done" but for State Farm's representation that it would "bring all disputed fees current"? English replied: "He continued with [English & Gloven's] representation. He ended up signing a promissory note to our firm, with the expectation that State Farm would be paying for the

defense. He [gave] our firm . . . the amended promissory note and the deed of trust . . . . [¶] He would never have done that had he not been told that State Farm was going to exonerate him of the requirement to pay everything. . . ."

English added that Behnke, instead of continuing with English & Gloven's representation, could have chosen "panel" counsel, Barr, who had been appointed by State Farm, or he could have "do[ne] something with [English & Gloven] in a different manner."

The court then asked English when the *Castaneda* case settled. When English answered that it settled in March 2004, the court asked, "Why would [Behnke] need panel counsel, then?"

English argued that Behnke's reliance in continuing to use English & Gloven "to his detriment" occurred at the January 2004 meeting, at which Behnke "ha[d] a panoply of decisions to make," and he (Behnke) decided to believe State Farm's representation that it would "bring all disputed fees current." English added that, at the time of the January 2004 meeting, Behnke was still defending the *Castaneda* fraud action and he "ha[d] no assurance it [could] be settled."

Not persuaded by these arguments, the court stated, "I simply do not see how anything that State Farm said in [the January 2004] meeting changed what [Behnke] did, and certainly nothing's pleaded." English replied that the second amended complaint adequately pleaded that Behnke relied in that he "continued working with English & Gloven [and] continued to incur the fees" and when State Farm did not pay all of the attorney fees billed by English & Gloven, Behnke was "responsible for them." The court responded, "But your fees have been determined in the [section] 2860 [arbitration]."

Citing *Fireman's Fund Ins. Companies v. Younesi* (1996) 48 Cal.App.4th 451 [55 Cal.Rptr.2d 671] (*Younesi*), English then argued that "you cannot get rid of all of the fraud elements and damages in the [section] 2860 [arbitration]." The court replied, "I never said that the [section] 2860 arbitration got rid of all of the fraud claims. What I said was it took care of any attorney's fees that were owed by State Farm to English & Gloven for representing [Behnke] in the underlying [*Castaneda*] case."

Noting that it "took some care in writing it," the court confirmed its tentative ruling and sustained without leave to amend State Farm's general demurrer to the fraud, promissory fraud, and equitable estoppel claims alleged in Behnke's second amended complaint.

C. *Analysis*

1. *Fraud and promissory fraud causes of action*

■ The court did not err in sustaining State Farm's general demurrer to the fraud and promissory fraud causes of action because Behnke's second amended complaint failed to allege facts sufficient to show that State Farm made either an actionable misrepresentation of a material fact, which is an essential element of his fraud cause of action (*Alliance Mortgage Co. v. Rothwell, supra*, 10 Cal.4th at p. 1239), or an actionable false promise, which is an essential element of his promissory fraud cause of action (*Muraoka v. Budget Rent-A-Car, Inc., supra*, 160 Cal.App.3d at p. 119).

Behnke's pleading shows that both of these fraud causes of action are based on his allegations that (1) under its original February 2003 retainer agreement with English & Gloven, State Farm represented that it would remit payments to English & Gloven, as Behnke's *Cumis* counsel in the *Castaneda* action, for "attorney's fees and costs in a timely fashion" and, if it failed to do so, State Farm would pay English & Gloven its normal hourly billing rates; (2) at the January 2004 meeting, State Farm represented that it would pay to English & Gloven "all unpaid attorney's fees and costs which were unpaid" as of the date of that meeting; and (3) on December 17, 2003, State Farm "intentionally manipulated" its original reservation of rights by amending its February 28, 2003 reservation of rights letter for the purpose of "strip[ping]" Behnke of "his legal right to independent counsel of his own choosing."

Behnke's second amended complaint also alleges in paragraph 28 that, in late November 2003 (i.e., before both State Farm's Dec. 2003 modification of its reservation of rights and the Jan. 2004 meeting), State Farm sent a letter to English & Gloven in which it "objected" to the amount of attorney fees that English & Gloven had incurred on behalf of Behnke in the *Castaneda* action, and English & Gloven "promptly responded" to that objection on Behnke's behalf by offering State Farm the opportunity to "review English & Gloven's entire defense file."

The factual allegations regarding State Farm's representations both in its retainer agreement with English & Gloven and during the January 2004 meeting regarding payment of English & Gloven's fees are insufficient as a matter of law to show that State Farm made an actionable misrepresentation or promise without intent to perform. These factual allegations and the fee dispute allegation in paragraph 28 show that the core dispute between Behnke and State Farm in fact revolved entirely around an ordinary *Cumis* counsel fee dispute between English & Gloven and State Farm regarding the amount

of attorney fees English & Gloven was billing to State Farm for Behnke's defense in the underlying *Castaneda* action. The factual allegations show State Farm objected that English & Gloven invoices were excessive, English & Gloven disagreed, and an ordinary *Cumis* counsel fee dispute thus arose between English & Gloven and State Farm.

 In this regard, we note it is undisputed that, in its February 27, 2003 letter to English & Gloven accepting the tender of Behnke's defense subject to a reservation of rights, State Farm expressly "reserve[d] the right to submit any disagreement over fees to arbitration as outlined in [section] 2860," which (as noted, *ante*) limits the fees an insurer is obligated to pay for *Cumis* counsel and mandates "final and binding arbitration" of any *Cumis* counsel fee disputes (§ 2860(c); see fn. 7, *ante*).

It is well established that an insurer that retains *Cumis* counsel to defend its insured is legally obligated to pay only *reasonable and necessary* defense costs. (*Cumis, supra*, 162 Cal.App.3d at p. 375 [where an insurer is obligated to provide its insured with independent counsel, the insurer "must pay the *reasonable* cost for hiring independent counsel by the insured" (italics added)]; see § 2860(c) [insurer is obligated to pay only the rates that it "actually [pays] to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended"]; see also *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 60 [70 Cal.Rptr.2d 118, 948 P.2d 909] (*Aerojet-General Corp.*) [in fulfilling its duty to defend an insured, the insurer "must incur *reasonable and necessary* costs" (italics added)].)

Here, in light of both the fee limitation and mandatory arbitration provisions of section 2860(c) and State Farm's letter to English & Gloven expressly reserving the right to submit any disagreement over fees to arbitration under section 2860, State Farm's consent to Behnke's decision to retain English & Gloven as his independent defense counsel in the *Castaneda* action, as alleged in the second amended complaint, must be deemed an agreement or promise by State Farm to pay any *Cumis* counsel fees billed by English & Gloven in the *Castaneda* action that were both *reasonably necessary* and *reasonable in amount* as determined by an arbitrator in the event a fee dispute arose, as occurred here. (See·*Cumis, supra*, 162 Cal.App.3d at p. 375; § 2860(c); *Aerojet-General Corp., supra*, 17 Cal.4th at p. 60.) Similarly, State Farm's alleged representation at the January 2004 meeting that it would pay to English & Gloven "all" attorney fees and costs that were unpaid as of the date of that meeting, which took place after the fee dispute arose between State Farm and English & Gloven, must be deemed an agreement or promise by State Farm to pay only those unpaid *Cumis* counsel fees billed by English & Gloven that were both reasonably necessary and

reasonable in amount as determined by an arbitrator. (*Cumis*, at p. 375; § 2860(c); *Aerojet-General Corp.*, at p. 60.)

As so construed, the allegations in the second amended complaint concerning State Farm's representations both in its retainer agreement with English & Gloven and during the January 2004 post-fee-dispute meeting are insufficient as a matter of law to show that State Farm made an actionable misrepresentation or promise without intent to perform. In both instances, the factual allegations show that State Farm agreed to pay only for those *Cumis* counsel fees that were both reasonably necessary and reasonable in amount as determined by an arbitrator in the event of a dispute. In this case, it is undisputed that State Farm paid to English & Gloven the full amount it owed under the confirmed arbitrator's award ($42,907.64 plus prejudgment interest in the amount of $9,290.40, for a total of $52,198.04).

Behnke's allegations that State Farm "intentionally manipulated" its original reservation of rights on December 17, 2003, by amending its February 28, 2003 reservation of rights letter is also insufficient to show that State Farm made an actionable misrepresentation or promise without intent to perform. Specifically, the second amended complaint alleges that, on that date, State Farm sent an amended reservation of rights letter to Behnke informing him that "the amended reservations no longer entitled [him] to independent counsel," that State Farm was appointing one of its panel counsel (Barr) to "take over [his] defense in the Castaneda Action," and that State Farm "would not pay English & Gloven any additional defense fees after January 5, 2004." Behnke also alleged that this amended reservation of rights letter "created a coverage dispute" between State Farm and him that compelled him to "engage English & Gloven to address issues raised by the coverage dispute result[ing] in [his] exposure to attorney fees and costs [that were] separate and apart from defense fees and costs." Behnke incorporated these allegations into his fraud and promissory fraud causes of action. These allegations are insufficient to show that State Farm made either a misrepresentation as to a material fact or a promise without intent to perform. We note that Behnke's pleading, which does not specifically allege the manner in which State Farm amended its reservation of rights, shows that the coverage dispute created by State Farm's original February 2003 reservation of rights existed before State Farm allegedly amended its reservation of rights on December 17 of that year and that, in any event, State Farm did not deny coverage. On the contrary, the second amended complaint alleges that State Farm contributed $50,000 to settle Castaneda's third party claims against him, and the settlement was "finalized" in June 2004.

Furthermore, in light of the strong legislative policy favoring arbitration of *Cumis* counsel fee disputes expressed in the mandatory arbitration provision

of section 2860(c), the fee dispute between English & Gloven and State Farm cannot be a basis for a fraud or promissory fraud claim without a factually specific allegation that State Farm represented or promised that it would not dispute the amount of English & Gloven's fees or that it waived its right to arbitrate the fee dispute under section 2860(c), a right that (as already discussed) it had expressly reserved in writing. Behnke's second amended complaint contains no such allegation.

In support of his assertion on appeal that he "is entitled to pursue his fraud claims past the pleading stage," Behnke relies on *Younesi, supra,* 48 Cal.App.4th 451, for the proposition that, "if a dispute between an insured and a carrier is about more than billing rates or the total amount of fees, the insured has claims for which there is a right to jury trial," and thus section 2860(c) "cannot be used to violate an insured's constitutional right to a jury." Behnke's reliance on *Younesi* is unavailing. In that case, an insurer sued its insured's *Cumis* counsel, asserting various tort claims based on the allegation they had engaged in fraudulent billing practices. (*Younesi, supra,* 48 Cal.App.4th at p. 455.) The defendant attorneys filed a motion to compel arbitration under section 2860(c) of the claims asserted in the plaintiff insurer's complaint, and the trial court denied the motion. (*Younesi,* at p. 456.) The Court of Appeal affirmed the denial of the insurer's motion to compel arbitration, holding that "the language of [section 2860(c)] can only be interpreted to limit the scope of arbitrable disputes to those in which only the amount of legal fees or the hourly billing rates are at issue." (*Younesi,* at p. 459.) *Younesi* is inapposite as the tort claims asserted by the plaintiff insurer in that case, unlike Behnke's fraud claims here, were not barred as a matter of law.

For the foregoing reasons, we conclude the court did not err in sustaining State Farm's general demurrer to the fraud and promissory fraud causes of action asserted in Behnke's second amended complaint. Accordingly, we need not reach the merits of State Farm's contention that the allegations in Behnke's pleading "do not support a finding of justifiable reliance or intent to induce reliance."

## 2. *Equitable estoppel claim*

■ We also conclude the court did not err in sustaining State Farm's general demurrer to Behnke's equitable estoppel claim. Witkin explains that "[a] valid claim of equitable estoppel consists of the following elements: (a) a representation or concealment of material facts (b) made with knowledge, actual or virtual, of the facts (c) to a party ignorant, actually and permissibly, of the truth (d) with the intention, actual or virtual, that the ignorant party act on it, and (e) that party was induced to act on it." (13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 191, pp. 527–528.)

However, as Witkin also explains, " '[t]he [equitable estoppel] doctrine acts defensively only.' " (13 Witkin, Summary of Cal. Law, *supra*, Equity, § 190, p. 527; see also *Central National Ins. Co. v. California Ins. Guarantee Assn.* (1985) 165 Cal.App.3d 453, 460 [211 Cal.Rptr. 435] [equitable estoppel "must be pleaded . . . either as a part of the cause of action or as a defense"].) As a stand-alone cause of action for equitable estoppel will not lie as a matter of law, the court properly sustained State Farm's general demurrer to Behnke's equitable estoppel claim.

### 3. *Denial of leave to amend*

Last, we conclude the court did not abuse its discretion in denying Behnke another opportunity to amend his pleading. Behnke has not demonstrated how he can amend his pleading to state facts sufficient to show that State Farm made an actionable misrepresentation of a material fact or a promise without intent to perform.

## II. *STATE FARM'S SUMMARY JUDGMENT MOTION*

Behnke also contends the court erred in granting State Farm's summary judgment motion as to Behnke's remaining first cause of action for breach of contract, second cause of action for bad faith denial of insurance policy benefits, and claim for punitive damages. We reject this contention.

### A. *Applicable Legal Principles*

On an appeal from a grant of summary judgment, we independently examine the record, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained, to determine whether a triable issue of material fact exists. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143]; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) In performing our de novo review, we view the evidence in a light favorable to the losing party (here, Behnke), liberally construing his evidentiary submission while strictly scrutinizing the prevailing party's (here, State Farm's) own showing, and resolving any evidentiary doubts or ambiguities in favor of the losing party. (*Saelzler, supra*, at pp. 768–769.)

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493], fn. omitted (*Aguilar*).) "A defendant [moving for summary judgment] bears the burden of persuasion

that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto." (*Ibid.*; see Code Civ. Proc., § 437c, subds. (*o*), (p)(2).) In such a case, the moving defendant "bears [the] initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar, supra*, 25 Cal.4th at p. 850.)

If the moving defendant meets its burden of production, the burden of production shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (*Aguilar, supra*, 25 Cal.4th at p. 850.) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Ibid.*, fn. omitted.)

## B. *Background, hearing and rulings*

State Farm brought a motion for summary judgment or, in the alternative, summary adjudication on the remaining claims for breach of contract, bad faith denial of insurance benefits, and punitive damages alleged in Behnke's second amended complaint. In its motion, State Farm argued the undisputed material facts showed that (1) Behnke's claim for breach of contract is without merit because State Farm satisfied its contractual obligations to Behnke, the attorney fees dispute was arbitrated under section 2860(c), and Behnke suffered no contract damages; (2) contesting *Cumis* counsel fees is not actionable bad faith, and Behnke's claim for bad faith denial of insurance benefits is without merit because the arbitrator's determination that the *Cumis* counsel fees billed by English & Gloven were excessive establishes that the attorney fees dispute was genuinely founded on a reasonable basis; and (3) Behnke's punitive damages claim is without merit because State Farm agreed to provide him with a defense and *Cumis* counsel, it exercised its rights to modify its reservation of rights letter and arbitrate the attorney fees dispute under section 2860(c) when English & Gloven charged unreasonable fees, and it paid the fees the arbitrator determined were owed; and thus Behnke cannot produce clear and convincing evidence that State Farm was guilty of malice, fraud or oppression.

### 1. *Behnke's breach of contract claim*

At the hearing on State Farm's motion, Attorney English argued on behalf of Behnke that the breach of contract claim involved two contracts: (1) the insurance policy under which Behnke was insured by State Farm, and (2) the

"agreement in January of 2004, whereby State Farm, through its agents [at the January 2004 meeting], entered into a separate agreement with [his] client[, Behnke,] regarding the outstanding defense issues, including payment of fees that were outstanding at the time."

The court responded that "the arbitration was designed to take care of all fees owed by the insurance company to *Cumis* counsel." English acknowledged that "that's where we had a disagreement early on in the case." English argued that the fee dispute was "a dispute between my client[, Behnke,] and State Farm regarding whether State Farm had discharged properly its defense obligations, including paying my firm" and that the dispute resulted in a lawsuit that alleged State Farm had not paid English & Gloven, and had unreasonably capped the fees at $140,000. English claimed the arbitrator's ruling favored Behnke, and asserted the arbitrator "found that the [$]140,000 was not the proper amount; that, in fact, State Farm had breached its obligation to [Behnke]; and [State Farm] owed more monies." These arbitration findings, English claimed, established State Farm's breach of the original insurance policy.

Stating, "I see it altogether differently," the court found that "there are no disputed issues . . . of any material fact." The court explained that when State Farm retained English & Gloven as Behnke's *Cumis* counsel, State Farm had a right under section 2860(c) (see fn. 6, *ante*) to pay the rates it actually pays attorneys in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. The court also explained that "if you two cannot agree on . . . what the appropriate rate is, then you go to arbitration. I don't see the arbitration as being a result of a breach of contract. The arbitration is part and parcel to the setting of fees."

English responded that "[t]here are triable issues of fact galore of waiver as to whether . . . State Farm would rely upon a [section] 2860 procedure," and argued that State Farm breached the January 2004 agreement by first saying at the January 2004 meeting that it would pay English & Gloven's outstanding fees and then requesting an arbitration under section 2860(c). When the court suggested the issue of whether State Farm had waived its right under section 2860 to arbitrate a fee dispute should have been decided by the arbitrator, English indicated the arbitrable issues were limited under that section to the "hourly rate and the reasonableness of the bills that [English & Gloven] presented."

The court asked English, "[H]ow has your client been harmed?" English acknowledged that Behnke had retained English & Gloven before State Farm retained that firm to defend him in the *Castaneda* action, but argued that although "State Farm's duties, in the context of that, may be governed, in

part, by [section] 2860," when State Farm said it would pay English & Gloven's outstanding bills and then did not pay those bills, "you have a breach of contract and you have damages."

The court replied, "Your client had no obligation to pay," and English responded, "We didn't agree to have [section] 2860 apply to the January 2004 meeting." When English stated, "[T]his is not a fee dispute case," the court replied, "I see it as a fee dispute case." English then asserted that "the [section] 2860 arbitration was not part of the January 2004 contract" and claimed that State Farm, by agreeing to pay the outstanding attorney fee bills, knowingly waived the right to arbitrate under section 2860.

The court again inquired about how Behnke was allegedly damaged by State Farm's decision to seek a section 2860 arbitration. English responded that Behnke "signed a promissory note for our firm for those fees" and he gave security to English & Gloven. The court replied, "He didn't have to do that."

Stating that the court was "not looking at the January 2004 agreement," English asserted that Behnke "signed an agreement with our firm long before State Farm retained us to . . . serve as his counsel." The court replied, "State Farm has no obligation to abide by that fee agreement."

English stated that Behnke "had to give us security." Responding that "[h]e didn't," the court stated, "He didn't have to keep you as his lawyers" because he could have "taken a lawyer that State Farm gave him." English stated that "we had not been paid," and asked, "Now what do you do?" The court replied, "[Behnke's] out of it. It's a dispute between you and State Farm."

English disagreed and stated, "State Farm has an agreement with its insured. . . . I don't have an independent right to sue State Farm." The court replied, "Well, you do have a right under [section] 2860 to arbitrate these fees with them." English responded, "The insured has the right. The insured, because the insured is the party under the contract."

When English added that "any right State Farm had to force the dispute into [section] 2860 arbitration was lost in January 2004 when they agreed to pay it," the court indicated that the issue of whether State Farm waived such right was an arbitrable issue under section 2860 because "the arbitrator can determine his own jurisdiction to determine issues." When English disagreed, the court stated, "I'm suggesting that anything that had to do with your bills should have been presented in the arbitration." English reiterated, "we didn't present the waiver issues" and argued the arbitrator "had no authority, had no jurisdiction, had no control."

The court indicated that the prevailing view about section 2860(c) is that a fee dispute "is a dispute between the attorneys and the insurance company." The court stated, "I'm assuming, which I think is supported by law, that any fees that are owed to you as *Cumis* counsel in the *Castaneda* action must be part of the [section] 2860 arbitration." English replied, "[T]hat's where we have our disagreement." The court added, "[T]hat's not a question of disputed fact. That's a question of law."

### 2. *Behnke's bad faith denial of insurance benefits claim*

With respect to Behnke's bad faith denial of insurance benefits cause of action, which State Farm's summary judgment motion also challenged, English asserted there were triable issues of material fact whether State Farm had acted in bad faith by amending the reservation of rights letter and failing to pay the outstanding fees, and whether section 2860 applied.

The court replied, "But there's no damage to your client." English responded that Behnke "lost his house" and "had to hire our firm . . . to get the [policy] benefits."

English indicated that the bad faith claim asserted in Behnke's second amended complaint was based on the theory that State Farm would not have paid for Behnke's defense in the *Castaneda* action if Behnke had not filed this lawsuit against State Farm.

When English argued that State Farm's nonpayment of English & Gloven's outstanding fees harmed Behnke, the court replied, "No, it didn't." The court added that English & Gloven, not Behnke, was harmed.

### 3. *Ruling*

After hearing the foregoing arguments, the court granted State Farm's motion for summary judgment on Behnke's causes of action for breach of contract and bad faith denial of insurance benefits. In its formal order, the court found that there was "no issue of disputed material fact, and that [State Farm] was entitled to judgment as a matter of law." The court thereafter entered judgment in favor of State Farm. Behnke's appeal followed.

### C. *Analysis*

### 1. *Breach of contract claim*

We conclude the court properly found that there is no triable issue of material fact with respect to Behnke's breach of contract cause of action and

that State Farm is entitled to judgment as a matter of law as to that claim. Damages are an essential element of a breach of contract claim. (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 775 [131 Cal.Rptr.2d 201].) The statutory measure of damages for breach of contract is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (§ 3300.) "Contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least *reasonably foreseeable* by them at that time; consequential damages beyond the expectations of the parties are not recoverable." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 515 [28 Cal.Rptr.2d 475, 869 P.2d 454], italics added.) Witkin explains that "in the law of contracts the theory is that the party injured by breach should receive as nearly as possible the equivalent of the benefits of performance." (1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 869, p. 956.)

Here, the undisputed material facts establish that Behnke has no viable claim for breach of contract damages because State Farm paid all policy benefits Behnke was entitled to receive. Specifically, it is undisputed that State Farm paid $50,000 to settle the underlying *Castaneda* action brought against Behnke. It is also undisputed that State Farm paid to English & Gloven the full amount of reasonable attorney fees and other defense costs it owed under the arbitration award ($42,907.64 plus prejudgment interest in the amount of $9,290.40, for a total of $52,198.04).

Behnke claims he suffered various uncompensated damages when State Farm disputed the reasonableness of English & Gloven's fees and asserts there are triable issues of material fact regarding the damages element of his breach of contract claim. Specifically, he alleges State Farm "breached its duty to defend when it ceased making any payment of defense fees and costs beginning in September 2003 and when it failed to make any payment for defense fees incurred on his behalf for over a year thereafter." Behnke asserts that, "when State Farm ceased making any payment for defense fees, it thrust that obligation upon [him]" and, "when State Farm unilaterally, arbitrarily, and unreasonably capped the undisputed defense fees and costs at $140,000, it thrust the obligation to pay the shortfall and consequences associated therewith upon [him]." He also maintains that "[t]hese and other instances made it reasonably foreseeable that English & Gloven would look to [him] for payment." As a result of State Farm's foregoing conduct, Behnke claims he incurred the following seven types of "foreseeable damages": (1) "personal exposure to the legal fees incurred in his defense"; (2) "consequences associated with his obligation for the legal fees and interest thereon which are reflected in the promissory note . . . secured by a deed of trust on his personal residence"; (3) "consequences associated with his losing his home in a foreclosure when he could not satisfy his obligations to pay for the fees and

costs incurred"; (4) "fees and costs incurred in his attempts to secure policy benefits"; (5) "general damages"; (6) prejudgment interest; and (7) "allowable costs."

In sum, Behnke claims that, as a result of State Farm's failure to pay the *full* amount of fees and costs that English & Gloven billed, including the amount the arbitrator determined was unreasonable, he suffered foreseeable and compensable harm because he became personally obligated under his own retainer agreement with English & Gloven to pay for English & Gloven's unpaid fees and costs.

This claim is unavailing. It is undisputed that State Farm was not a party to the February 20, 2003 fee agreement between Behnke and English & Gloven. In his deposition testimony, Donald English acknowledged that English & Gloven never provided a copy of that fee agreement to State Farm during the pendency of the *Castaneda* action. As already discussed, consequential damages allegedly resulting from a breach of contract are not recoverable unless they were reasonably foreseeable at the time the parties entered into the contract. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd., supra,* 7 Cal.4th at p. 515.) Even if State Farm had been contractually obligated to pay the full billed amount of English & Gloven's fees in this matter, and we have already concluded it was not, Behnke has failed to show the existence of a triable issue of material fact as to whether his claimed consequential damages were reasonably foreseeable to State Farm.

### 2. *Bad faith denial of insurance benefits claim*

■ We next conclude the court properly found that there is no triable issue of material fact with respect to Behnke's bad faith denial of insurance benefits cause of action and that State Farm is entitled to judgment as a matter of law as to that claim. "An insurer is said to act in 'bad faith' when it not only breaches its policy contract but also breaches its implied covenant to deal fairly and in good faith with its insured. 'A covenant of good faith and fair dealing is implied in every insurance contract. [Citations.] The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits. . . .' " (*Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1071–1072 [56 Cal.Rptr.3d 312].) The covenant of good faith and fair dealing "is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 [44 Cal.Rptr.2d 370, 900 P.2d 619] (*Waller*).) Absent an underlying contractual right, "the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.' " (*Ibid.*)

Here, as Behnke has no viable breach of contract claim against State Farm for reasons already discussed, his claim for bad faith denial of insurance benefits fails as a matter of law. (*Waller, supra*, 11 Cal.4th at p. 36.)

■ Behnke's bad faith claim also fails for the additional reason that, under the judicially recognized "genuine dispute" rule, State Farm's decision to dispute English & Gloven's excessive billings was objectively reasonable as a matter of law. The California Supreme Court has explained that "an insurer's denial of or delay in paying benefits gives rise to tort damages only if the insured shows the denial or delay was unreasonable. [Citation.] As a close corollary of that principle, it has been said that 'an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract.' [Citation.] This 'genuine dispute' or 'genuine issue' rule was originally invoked in cases involving disputes over policy interpretation, but in recent years courts have applied it to factual disputes as well." (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 723 [68 Cal.Rptr.3d 746, 171 P.3d 1082].) Thus, an insurer cannot be liable for bad faith if its conduct was objectively reasonable. (*CalFarm Ins. Co. v. Krusiewicz* (2005) 131 Cal.App.4th 273, 277 [31 Cal.Rptr.3d 619].)

Here, the undisputed facts (discussed, *ante*) establish that a dispute arose between Behnke (and his *Cumis* counsel, English & Gloven) on the one hand, and State Farm on the other, over the amount of policy benefits State Farm was obligated to pay for *Cumis* counsel fees and costs incurred by English & Gloven on Behnke's behalf; that the dispute was properly submitted to mandatory arbitration under section 2860(c); and that the arbitrator, in an award confirmed by the trial court, ordered State Farm to pay an amount less than the amount billed by English & Gloven. These undisputed facts establish as a matter of law that State Farm's conduct in disputing the billed amount of fees and costs billed by English & Gloven was objectively reasonable, and thus Behnke's insurance bad faith claim, which is based on that conduct, fails as a matter of law. (*Wilson v. 21st Century Ins. Co., supra*, 42 Cal.4th at p. 723; *CalFarm Ins. Co. v. Krusiewicz, supra*, 131 Cal.App.4th at p. 277.)

### 3. *Punitive damages claim*

■ Last, we conclude the court properly found that there is no triable issue of material fact with respect to Behnke's punitive damages claim and that State Farm is entitled to judgment as a matter of law as to that claim. Without tort liability, there can be no liability for punitive damages. (See § 3294, subd. (a) ["In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the

defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."].)

Here, we have already concluded that State Farm is entitled to judgment as to Behnke's fraud and other tort causes of action. Accordingly, State Farm is also entitled to judgment as a matter of law as to his claim for punitive damages.

## DISPOSITION

The judgment is affirmed. State Farm shall recover its costs on appeal.

Huffman, Acting P. J., and Haller, J., concurred.

A petition for a rehearing was denied June 29, 2011, and appellant's petition for review by the Supreme Court was denied September 21, 2011, S195477. Werdegar, J., did not participate therein.