Filed 12/13/22 Macc Consulting v. City of California City CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MACC CONSULTING, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF CALIFORNIA CITY et al., <br><br> Defendants and Respondents. | F082647 <br><br> (Super. Ct. No. BCV-20-102197) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Kern County. Stephen D. Schuett, Judge.

Yvette McDowell Consulting and Yvette McDowell for Plaintiff and Appellant.

Fortin Law Group and Kelly A. Fortin for Defendants and Respondents.

-ooOoo-

Plaintiff MACC Consulting, Inc. (MACC) sued the City of California City (City), a city manager, three members of the city council, and a private party for damages and declaratory relief in connection with the City's denial of a permit to deliver cannabis. The defendants filed special motions to strike under California's anti-SLAPP statute,

Code of Civil Procedure section 425.16.[1] The trial court order granted the motion of City and the city manager as to all MACC's claims and MACC appealed.

In conducting the first step of the anti-SLAPP analysis, we conclude the communications between City personnel and MACC relating to the issuance of a cannabis delivery permit were "made in connection with an issue under consideration or review by a legislative … body" and, therefore, constitutes protected activity. (§ 425.16, subd. (e)(2).) Also, the vote of the city council on MACC's administrative appeal from the city council's decision to stop the processing of all delivery permits constitutes protected activity. Because the same conduct is the basis for MACC's claims that City's municipal code provisions, *as applied*, violated its constitutional rights, those claims also arise from protected activity. In contrast, MACC's claim that the municipal code provisions are unconstitutional *on their face* does not arise from protected activity and, therefore, the motion to strike should have been denied as to those claims for declaratory relief.

The second step of the anti-SLAPP analysis addresses whether MACC demonstrated its claims for relief arising from protected activity had minimal merit. We conclude MACC failed to carry that burden because it did not present any admissible evidence in opposing the anti-SLAPP motion. Thus, the trial court properly struck the claims arising from protected activity—namely, the claims other than those challenging the facial validity of the municipal ordinance.

We therefore reverse the judgment and remand for further proceedings limited to MACC's claims that provisions in the municipal code are unconstitutional on their face.

---

[1] A "SLAPP" is a strategic lawsuit against public participation, and a special motion to strike under section 425.16 is referred to as an anti-SLAPP motion. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1007, fn. 1 (*Bonni*).) Unlabeled statutory references are to the Code of Civil Procedure.

# FACTS

## *Parties*

MACC is a California corporation that asserts its principal place of business is on Curtiss Place in California City. MACC's 2019 and 2020 statements of information indicate its officers and only directors are Rebecca Marie Maccharoli and Victor Joseph Maccharoli and 42665 Tempo Drive, Lancaster, California, is the address of the corporation's principal executive office. The certificates of interested entities or persons (Judicial Council form APP-008) certified and filed by MACC's counsel in August and November of 2021 represented to this court that no person "has an ownership interest of 10 percent or more in [MACC]." (Cal. Rules of Court, rule 8.208(e)(1).)

The defendants in this lawsuit are City, city manager Anna Linn, three members of the city council (William Smith, Ronald Smith and Donald Parris), and Richard Jones. The complaint alleges Jones owns a cannabis business (i.e., is a potential competitor of MACC) and illegally conspired with the city council members to benefit their self-interests at the expense of MACC and other cannabis business operators by unjustifiably denying them permits or licenses.

## *Municipal Code*

In 2018, City adopted Ordinance No. 18-766 to regulate the activity of cannabis businesses and dispensaries. The ordinance became chapter 6 of title 5 of City's municipal code (Chapter 6). The stated purposes of Chapter 6 are to (1) provide opportunities for cannabis businesses to operate in the City; (2) regulate cannabis related activities in a responsible manner; (3) protect neighborhoods, residents and businesses from negative impacts; (4) protect the health, safety and welfare of residents; and (5) enforce rules and regulations consistent with state law. (Chapter 6, § 5-6.101) Section 5-6.103 of Chapter 6 expressly prohibited the possession, delivery or sale of cannabis except as specifically authorized by Chapter 6.

3.

The ordinance defines two types of permits—a " 'Cannabis business permit' " and a " 'Cannabis Dispensary Permit.' " (Chapter 6, § 5-6.201, subds. (e), (f).) It also defines the term " 'Dispensary' " to mean a cannabis business facility where cannabis is offered for retail sale, "including an establishment (whether fixed or mobile) that *delivers*, pursuant to express authorization, medical cannabis … as part of a retail sale, and where the operator holds a valid cannabis business permit from the City … authorizing the operation of a dispensary." (Chapter 6, § 5-6.201, subd. (q), italics added.)[2] No person may engage in any cannabis business within the City unless the person has a valid cannabis business permit from the City and is in compliance with all applicable state and local laws. (Chapter 6, § 5-6.301.) Similarly, no person may operate a cannabis dispensary within the City unless the person has a valid cannabis dispensary permit from the City and is in compliance with all applicable state and local laws. (Chapter 6, § 5-6.301.) The maximum number of cannabis dispensaries allowed to operate in the City at any one time is "two (2) retail storefront operations and ten (10) delivery only dispensaries with no retail storefront." (Chapter 6, § 5-6.401, subd. (a).)

To obtain a permit from City, the applicant must complete the application procedure and pay a nonrefundable application fee. (Chapter 6, § 5-6.501, subds. (a), (b).) "After the initial review the City Manager will issue permits for all cannabis businesses except for dispensaries. For cannabis dispensary permits, the City Manager will make a recommendation to the City Council, and the City Council shall make a final determination in accordance with Article 7."[3] (Chapter 6, § 5-6.501, subd. (c).) The ordinance also stated (1) "City reserves the right to reject any or all applications;" (2)

---

[2] City interprets Chapter 6 as authorizing two types of cannabis dispensaries—storefront and delivery only.

[3] The process for reviewing and selecting who will be issued cannabis dispensary permits and the city council's role in that process is addressed in sections 5-6.701 and 5-6.702 of Chapter 6.

City may postpone or cancel the entire program under Chapter 6 without any liability, obligation or commitment to any party; and (3) applicants assume the risk that the program or any particular category of permit may be cancelled at any time prior to permit issuance. (Chapter 6, § 5-6.501, subd. (d).) Permits expire 12 months after the date of issuance and renewal applications must be filed 60 days before the expiration date of the permit. (Chapter 6, §§ 5-6.502, 5-6.504, subd. (a).) When the city manager decides to revoke, suspend or deny a permit, the aggrieved party may appeal that decision by filing a written appeal with the city clerk within 10 days of the challenged decision. (Chapter 6, § 5-6.602, subd. (a).) The city council shall hear the appeal de novo. (Chapter 6, § 5-6.603, subd. (a).)

The parties dispute how Chapter 6 applies to the application submitted by MACC. City contends MACC did not apply for a *cannabis business* permit for purposes of Chapter 6 and, instead, applied for a delivery only *cannabis dispensary* permit. In City's view, all cannabis dispensary permits (whether storefront or delivery only) require the approval of the city council. In contrast, MACC quotes Section 5-6.501, subdivision (c) of Chapter 6 and appears to contend the city manager had the authority to issue MACC a delivery permit.

*MACC's Application*

On March 8, 2019, MACC submitted an application for a delivery permit to City along with a $9,000 entry fee. A copy of that application is not part of the appellate record. During April 2019, MACC made several phone calls to City to determine the status of its application.

On April 17, 2019, MACC received an e-mail from John Sellers, chief compliance officer for West Coast AML Services located in Sausalito. Sellers' e-mail stated City had "retained West Coast AML Services to review for completeness the Cannabis Business Permit Application [MACC] submitted" and identified items that were missing or needed clarification. Sellers requested (1) a signed indemnification agreement; (2) proof of

5.

either ownership or a leasehold interest in the proposed business location on Lindberg Road; (3) a construction budget identifying the costs expected to be incurred in building out the proposed facility; (4) three years of pro forma financial statements; and (5) documentation showing MACC had sufficient funds to support the construction and its first three years of operation.

On April 30, 2019, MACC provided the requested documents by e-mailing them to Linn and Tiffany Carter, an employee of City's building department. Meanwhile, on April 27, 2019, a city council meeting was held to interview applicants for delivery permits. MACC alleges it never received notice to attend the meeting.

MACC asserts it made five phone calls to City between May 20, 2019, and June 26, 2019, without anyone answering. On June 26, 2019, Carter telephoned MACC's consultant and advised him that (1) the delivery licenses had been issued and (2) MACC had been sent an e-mail advising them to stand in front of the city council to receive their license. The same day, Carter also called MACC and stated that all permits had been handed out and MACC was "first accepted for secondary review for final decision for city council meeting" and MACC ranked sixth in line for the 12 permits. Carter did not mention any e-mail being sent to MACC advising it to stand before the city council. The e-mail received that day by MACC's consultant was a forwarded Carter e-mail dated April 18, 2019, which stated: "Congratulations on moving forward to the next phase of the Cannabis Delivery-Only Dispensary process. Please find attached a letter with further information that will provide you with the next steps. If you have further questions please contact me at your earliest convenience."

MACC alleges that on July 12, 2019, it spoke with the mayor by phone and he stated "the city manager just walked in and I am going to put you on speaker, … How would you like to come and pick up your permit today?" MACC responded in the affirmative and the mayor offered his congratulations. During the conversation, the mayor and Linn did not state MACC had been disqualified from the process or that

6.

MACC had failed to respond to notification from City to appear before the city council. MACC alleges that when it offered to stand before the city council, the mayor said, "it was not necessary and come get your permit and start your business and good luck to you." MACC went to city hall and was issued a document on letterhead from the "OFFICE OF THE CITY MANAGER" and dated July 12, 2019. The document began: "To Whom It May Concern" and then stated: "This letter is to confirm that *MACC Consulting, Inc have* met all requirements necessary per the City of California City's Cannabis Regulations and Ordinances and currently qualify to hold the following licenses: [¶] Business name: *MACC Consulting, Inc* [¶] APN: *216-170-06* [¶] Type of license: *(1) Delivery Permit*." The one-page document was signed by the mayor.[4]

MACC used the July 12, 2019 document to apply for a provisional delivery license from California's Bureau of Cannabis Control (BCC). MACC obtained the license, which was valid from November 8, 2019 to November 7, 2020. MACC alleges the BCC, in processing MACC's application for a state license, was required to verify the permit issued by City. MACC alleges the City clerk conferred with the BCC directly and verified the permit was issued on July 12, 2019.

From July 12, 2019, through January 23, 2020, MACC alleges it relied on the permit and the representations of City officials to build out its facility and pass final fire and planning department inspections. MACC states it incurred over $100,000 in costs and fees in reliance on City's issuance of the permit.

MACC asserts that on January 24, 2020, it went to city hall to fill out an application for their city permit and was informed by an employee that it had been disqualified and not awarded a permit. After MACC showed the employee a copy of the

---

**4** MACC's pleading uses several terms when referring to this document, including "letter," "permit/notification," "permit," and "License." City and Linn disagree with MACC's assertion that a permit or license was issued. They contend the face of the document establishes that it was only a statement of eligibility, not a grant of any permit or license.

July 12, 2019 document, the employee left and spoke with Linn. When the employee returned, he informed MACC that Linn said MACC could not get a permit until April 2020. He also stated MACC was disqualified for not showing up for a city council meeting.

When April 2020 arrived, MACC still had not been issued a permit. Instead, on April 28, 2020, the city council passed a motion to stop the processing of all cannabis delivery permits. On May 6, 2020, MACC submitted a notice of intent to appeal the decision. An appeal hearing was held on June 23, 2020, and the city council first voted to grant MACC's appeal. A few minutes later, a planning department employee informed the council that MACC did not have a particular permit required to complete the application. As a result, a council member who had voted to grant the appeal reversed his decision and voted to deny the appeal.[5] Consequently, MACC's appeal was denied.

On August 31, 2020, MACC gave up its business location because it could no longer make the $5,000 monthly payment. MACC alleges that it would have become operational but for City's decision to revoke and refuse to renew its permit.

On September 11, 2020, MACC submitted to City a document it called a government claim for wrongful revocation of cannabis license. Under Government Code section 912.4, subdivision (a), a public entity's board is required to act on the claim withing 45 days after it has been presented. If a board fails or refuses to act on a claim within the prescribed time, the claim is deemed rejected at the end of the 45-day period. (Gov. Code, § 912.4, subd. (c).)

## PROCEEDINGS

On September 18, 2020—before City acted on the claim or the 45-day period expired—MACC filed a 40-page complaint against City, Linn, the three members of the

---

[5] During argument of the anti-SLAPP motion, MACC's counsel argued this change in the voting denied MACC its right to due process because the change occurred without MACC being allowed to present any evidence.

city council who voted against MACC's appeal, and Jones. The complaint contained causes of action labeled (1) equitable estoppel; (2) violations of the California Political Reform Act; (3) fraud; (4) violation of MACC's First Amendment rights (42 U.S.C. § 1983); (5) violation of MACC's Fifth and Fourteenth Amendment rights (42 U.S.C. § 1983); (6) violation of article I, section 2 of the California Constitution; (7) intentional interference with prospective economic advantage; and (8) unfair and deceptive business practices.

On November 3, 2020, a municipal election was held. The defendant council members were not reelected. At the end of November, Jones filed an anti-SLAPP motion and a request for judicial notice. Before Jones's motion was heard, MACC filed a request for dismissal without prejudice as to defendant Jones only, which the clerk of court accepted and entered.

On December 1, 2020, City and Linn filed answers to the complaint. On December 29, 2020, they filed a special motion to strike the complaint under the anti-SLAPP statute along with a request for judicial notice. The register of actions included in the clerk's transcript contains January 22, 2021 entries showing MACC filed (1) an opposition to the motion to strike filed by City and Linn and (2) a request for judicial notice in support of the opposition. These documents are not included in the clerk's transcript.

On January 26, 2021, City and Linn filed a reply to MACC's opposition along with evidentiary objections to MACC's complaint and exhibits and a request for judicial notice. City and Linn asserted the opposition was late because it was due on January 15, 2021 (i.e., nine court days prior to the hearing) and was served after their notice of nonopposition. They also argued that MACC could not establish a likelihood of success on the merits because the complaints' allegations and exhibits did not constitute admissible evidence.

9.

On January 29, 2021, the trial court heard the motion of City and Linn along with the anti-SLAPP motion to strike of the three former council members. The court granted the council members' motion before hearing argument on the motion filed by City and Linn. The court stated it believed the facts underlying the complaint constituted protected activity but had an issue on whether a facial or as-applied challenge to the constitutionality of Chapter 6 arose from protected activity. Also, during argument from MACC's attorney, the court noted (1) the issue of MACC having presented no evidence to the court and (2) the principle from case law that a plaintiff cannot rely on an unverified pleading to make the required evidentiary showing of a probability of success on the merits. Ultimately, the court concluded the underlying facts in MACC's complaint constituted protected activity, the burden shifted to MACC to demonstrate with admissible evidence that it had a probability of prevailing on its claims, and MACC's reliance on exhibits to the unverified complaint failed to meet its burden. As a result, the court granted the motion of City and Linn.

On February 19, 2021, the trial court signed and filed an "ORDER FOR JUDGMENT" stating the special motion to strike filed by City and Linn was granted in its entirety with judgment for City and Linn. It also stated that City and Linn were prevailing parties entitled to attorney fees and costs and that MACC's complaint was dismissed in its entirety.

On April 7, 2021, MACC filed a notice of appeal challenging the judgment entered in favor of City and Linn. MACC did not appeal from the separate judgment entered in favor of the former council members.

MACC's opening brief states that "[o]nly the first, fourth and sixth causes of action for equitable estoppel, violation of rights under first amendment to U.S. Constitution and violation of the California Constitution (Art. I § 2), respectively, are at issue in the matter." Consequently, this opinion addresses only the allegations in those three causes of action.

10.

**DISCUSSION**

I.     BASIC PRINCIPLES

    A.     Anti-SLAPP Motions

Section 425.16 provides an expedited procedure for dismissing lawsuits filed primarily to inhibit the valid exercise of the constitutionally protected rights of speech or petition. (§ 425.16, subd. (a).) Subdivision (b)(1) of section 425.16 provides:

> "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

This provision creates a two-step inquiry for resolving anti-SLAPP motions. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Ibid.*) Under the second step, the plaintiff must demonstrate (1) the pleading is legally sufficient and (2) the claim alleged is supported by sufficient evidence to make a prima facie showing of facts that would sustain a favorable judgment. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.)

    B.     Standard of Appellate Review

Appellate courts review de novo the grant or denial of an anti-SLAPP motion. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) Under this standard of review, appellate courts "exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Ibid.*) An appellate court must "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or

11.

defense is based." (§ 425.16, subd. (b)(2).) Neither trial nor appellate courts weigh credibility or compare the weight of the evidence. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) "Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

Three fundamental principles of appellate review provide that (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of affirmatively demonstrating error, which requires the presentation of an adequate record. (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 59–60; see *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) California's doctrine of implied findings is a natural and logical corollary to these principles. (*Fladeboe*, *supra*, at p. 58.) Furthermore, the general rule that a statement of decision is not required for an order on a motion has been applied to an order granting an anti-SLAPP motion. (See *Lien v. Lucky United Properties Investment, Inc.* (2008) 163 Cal.App.4th 620, 623–625.) Based on the foregoing principles, we reject MACC's arguments that this case should be remanded to the trial court with instructions to render a decision with a more explicit analysis.

II.     CLAIM ARISING FROM PROTECTED ACTIVITY

A.     Definitions

The first step in the anti-SLAPP analysis addresses whether the moving party has carried its burden of showing that the challenged "cause of action" is one "arising from" an activity "in furtherance of the person's right of petition or free speech"—that is, a protected activity. (§ 425.16, subd. (b)(1).)

1.     *Protected Activity*

A list of protected activity is set forth in subdivision (e) of section 425.16, which states:

12.

"As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) *any written or oral statement or writing made in connection with an issue under consideration or review by* a legislative, executive, or judicial body, or *any other official proceeding authorized by law*, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) *any other conduct in furtherance of the exercise of* the constitutional right of petition or *the constitutional right of free speech in connection with a public issue or an issue of public interest*." (Italics added.)

The purpose of these statutory categories is to "provide objective guidelines that lend themselves to adjudication on pretrial motion." (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 422 (*Vasquez*).)

### 2. Cause of Action

The next statutory term of significance to the first step of the anti-SLAPP analysis is "cause of action." (§ 425.16, subd. (b)(1).) What constitutes a "cause of action" subject to being struck under the anti-SLAPP statute has been widely litigated. Our Supreme Court has addressed the problem of "a so-called 'mixed cause of action' that combines allegations of activity protected by the statute with allegations of unprotected activity." (*Baral*, *supra*, 1 Cal.5th at p. 381.) The court concluded the Legislature used the term "cause of action" to target "only claims that are based on the conduct protected by the statute" and, thus, courts should not be concerned with how a complaint is framed or how the primary right theory might define a cause of action. (*Id*. at p. 382.) Consequently, "an anti-SLAPP motion may challenge any *claim for relief* founded on allegations of protected activity, [but] it does not reach claims based on unprotected activity." (*Ibid*., italics added.)

Stated another way, an anti-SLAPP motion need not challenge an entire cause of action as pleaded in the complaint. (*Bonni, supra,* 11 Cal.5th at p. 1010.) Accordingly, "courts should analyze each claim for relief—*each act or set of acts supplying a basis for*

13.

*relief*, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected." (*Ibid*., italics added.) This inquiry requires courts to "consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park*, *supra*, 2 Cal.5th at p. 1063.)

### 3. Arising From

The statutory term "arising from" also plays a role in the first step of the anti-SLAPP analysis. (§ 425.16, subd. (b)(1).) "A claim *arises from* protected activity when that activity underlies or forms the basis for the claim." (*Park*, *supra*, 2 Cal.5th at pp. 1062-1063, italics added; *Bonni*, *supra*, 11 Cal.5th at p. 1009.) Thus, a defendant can satisfy the "arising from" element of the statute by demonstrating that the defendant's *conduct by which plaintiff claims to have been injured falls* within one of the categories of subdivision (e) of section 425.16. (*Park*, *supra,* at p. 1063.)

### 4. Summary

Based on the foregoing decisions of our Supreme Court, we conclude a defendant's first-step burden is to identify the activity that underlies or forms the basis for each challenged claim for relief and demonstrate that activity is protected by the anti-SLAPP statute. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.)

MACC argues that in conducting the first step of the anti-SLAPP analysis we should determine the principal thrust or gravamen of its causes of action and cites *Martinez v. Metabolife International, Inc.* (2003) 113 Cal.App.4th 181 as support. In *Martinez,* the court concluded "it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies." (*Id*. at p. 188.) The vague terms "principal thrust" and "gravamen" have been rendered out-of-date by recent decisions of our Supreme Court. In *Bonni*, the plaintiff contended an anti-SLAPP motion is aimed at the entire cause of action and, therefore, courts should consider whether the gravamen of the entire cause of action was based on protected or unprotected

14.

activity. (*Bonni*, *supra*, 11 Cal.5th at p. 1011.) The court rejected that approach, stating its adoption would saddle courts with settling "intractable, almost metaphysical problems about the 'essence' of a cause of action that encompasses multiple claims." (*Ibid.*)

In *Bonni*, the court also stated it did "not suggest that every court that has continued to label its approach a gravamen test … has erred." (*Bonni*, *supra*, 11 Cal.5th at p. 1012.) Some courts use that label but correctly determine whether particular acts alleged within the cause of action supply the elements of a claim for relief or, alternatively, are incidental background. (*Ibid.*) Here, City and Linn also contend they need only show the gravamen of MACC's causes of action arise from protected activity. However, they assert this test requires courts to focus on the activity that gave rise to the asserted liability and the statutory term "cause of action" does not mean an indivisible cause of action under the primary right theory. Thus, defendants have not incorrectly referred to the essence or gist of a mixed cause of action, but instead refer to "whether particular acts alleged within the cause of action supply the elements of a claim." (*Bonni*, *supra*, at p. 1012.)

B.      Equitable Estoppel

Having defined the relevant statutory terms, we next consider whether City and Linn have carried their burden of demonstrating MACC's claims for relief arise from protected activity. (§ 425.16, subd. (b)(1).) We start with MACC's first cause of action for equitable estoppel and identify the activity that underlies or forms the basis for relief.

1.      Activity Underlying the Estoppel Claim

MACC's estoppel theory makes a general reference to conduct by defendants upon which it reasonably relied to its injury or detriment. MACC then alleges that conduct included the multiple correspondence that defendants exchanged with MACC regarding permitting for cannabis, such as the issuance and granting of the permit along with a confirming notification.

15.

MACC also alleges it submitted its application for a cannabis delivery permit and $9,000 in application fees to City on March 8, 2019. Thereafter, MACC and its consultant made many unsuccessful and successful attempts to communicate with City personnel and the City's cannabis consultant. In April, MACC was notified that additional information and documents were needed to complete the application. On April 27, 2019, a city council meeting was held to interview applicants for delivery permits. MACC alleges it never received notice to attend the meeting. On April 30, 2019, MACC e-mailed the requested documents and information to Linn and Carter.

MACC alleges that on June 26, 2019, Carter phoned MACC's consultant and advised him that (1) the delivery licenses had been issued and (2) MACC had been sent an e-mail advising them to stand in front of the city council to receive their license. The e-mail received by MACC's consultant was a forwarded Carter e-mail dated over two months earlier. Carter's e-mail stated: "Congratulations on moving forward to the next phase of the Cannabis Delivery-Only Dispensary process. Please find attached a letter with further information that will provide you with the next steps. If you have further questions please contact me at your earliest convenience."

Also on June 26, 2019, Carter called MACC and stated that all permits had been handed out and MACC was "first accepted for secondary review for final decision for city council meeting" and MACC ranked sixth in line out of 12 permit slots. Carter did not mention any e-mail being sent to MACC advising it to stand before the city council.

MACC alleges that on July 12, 2019, it spoke with the mayor by phone and he stated, "the city manager just walked in and I am going to put you on speaker, … How would you like to come and pick up your permit today?" MACC responded in the affirmative and the mayor offered "congratulations." During the conversation, the mayor and Linn did not state MACC had been disqualified from the process or that MACC had failed to respond to notification from City to appear before the city council. MACC alleges that when it offered to stand before the city council, the mayor said, "it was not

16.

necessary and come get your permit and start your business and good luck to you."
MACC went to city hall and was issued the July 12, 2019 document that MACC's
pleading as described as a "letter," "permit/notification," "permit," and "License." The
contents of that one-page document are described earlier in this opinion. (See fn. 4 and
accompanying text, *ante*.)

When the BCC was processing MACC's application for a delivery license, it was
required to verify City had issued MACC a permit. MACC alleges the City clerk
conferred directly with the BCC and verified the permit was issued on July 12, 2019.

MACC alleges that on January 24, 2020, it went to city hall to fill out an
application for its city permit and was informed by an employee that it had been
disqualified and not awarded a permit. After MACC showed the employee a copy of the
July 12, 2019 document, the employee left and spoke with Linn. When the employee
returned, he informed MACC that Linn said MACC could not get a permit until April
2020. He also stated MACC was disqualified for not showing up for a city council
meeting.

City did not issue MACC a permit in April 2020. Instead, on April 28, 2020, the
city council passed a motion to stop the processing of all cannabis delivery permits.
MACC appealed this decision, and the city council denied the appeal.

To summarize, MACC's equitable estoppel claim for relief is based on the
communications and other conduct that occurred between it and City personnel after
MACC submitted its application for a cannabis delivery permit in March 2019 through
City's allegedly wrongful denial of MACC's appeal in June 2020. The other conduct
includes the issuance of the July 12, 2019 document and the subsequent denial of a
cannabis delivery permit (which MACC also characterizes as a failure to renew the
permit).

17.

### 2. *Conduct Alleged Constitutes Protected Activity*

First, to the extent that MACC's equitable estoppel theory seeks to impose liability on City for the June 23, 2020 vote by the council members that resulted in the denial of MACC's appeal, we conclude that vote constitutes protected activity. In *Vasquez, supra,* 1 Cal.5th 409, the City of Montebello sued members of the city council and a city administrator for an unlawful conflict of interest under Government Code section 1090 in connection with the award of a waste disposal contract to a private party. (*Vasquez, supra,* at pp. 413–415.) The members of the council and the administrator filed an anti-SLAPP motion, which the trial court denied. (*Id.* at p. 415.) The Court of Appeal affirmed and the Supreme Court reversed, concluding "the council members' votes, as well as statements made in the course of their deliberations at the city council meeting where the votes were taken, qualify as 'any written or oral statement made before a legislative ... proceeding.' (§ 425.16, subd. (e)(1).)" (*Vasquez, supra,* at pp. 422–423.)

Second, MACC's equitable estoppel theory is based on the communications between City personnel and MACC after MACC submitted its application for a cannabis delivery permit. In *Vasquez,* the Supreme Court concluded that "[a]nything [the council members] or City Administrator Torres said or wrote in negotiating the contract qualifies as 'any written or oral statement or writing made in connection with an issue under consideration or review by a legislative ... body ....' (§ 425.16, subd. (e)(2).)" (*Vasquez, supra,* 1 Cal.5th at p. 423.) Based on this precedent, we conclude the communications between City personnel and MACC relating to the issuance of a cannabis delivery permit were made in connection with an issue under consideration or review by a legislative body and, therefore, constitutes protected activity. (§ 425.16, subd. (e)(2).)[6] In reaching this conclusion, we interpret Chapter 6 as requiring the city council to decide whether to

---

[6] Thus, we need not address the application of the catchall provision in subdivision (e)(4) of section 425.16. (See *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149–150 [catchall provision calls for a two-part analysis].)

issue a cannabis dispensary permit and as classifying the delivery only permit sought by MACC as a cannabis dispensary permit. (Chapter 6, § 5-6.501, subd. (c).) In addition, MACC characterization of the conversations with Linn as informal discussions does not support a conclusion that Linn's oral statements were not "made in connection with an issue under consideration or review by a legislative ... body." (§ 425.16, subd. (e)(2).) Therefore, City and Linn have carried their initial burden and established the equitable estoppel claims arise from activity protected by section 425.16. (See *Baral*, *supra*, 1 Cal.5th at p. 384.) Consequently, we turn to the second step of the anti-SLAPP analysis.

### 3. The Equitable Estoppel Claim Lacks Merit

The second step of the anti-SLAPP analysis examines whether "the plaintiff has established that there is a [reasonable] probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) To satisfy this standard, "[t]he plaintiff need only state and substantiate a legally sufficient claim," which is described as showing the claim has " 'minimal merit.' " (*Vasquez*, *supra*, 1 Cal.5th at p. 420.)

First, MACC has not demonstrated its complaint stated a legally sufficient claim for equitable estoppel. Under California law, equitable estoppel does not constitute an independent cause of action. (*Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1463.) Instead, the doctrine of equitable estoppel acts defensively only. (13 Witkin, Summary of Cal. Law (11th ed. 2017) Equity, § 212, p. 562.)

Second, as a separate and independent ground for concluding the equitable estoppel claim lacks merit, MACC did not present sufficient evidence to substantiate its claim. MACC's reliance on the exhibits to its unverified complaint was inappropriate. In *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, the Supreme Court stated that "a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' " (*Id.* at p. 940; see *HMS Capital, Inc. v. Lawyers Title Co., supra,* 118 Cal.App.4th at p. 212 [plaintiffs must produce evidence that would be

19.

admissible at trial].) The trial court relied on this principle of law in concluding MACC did not present the evidence necessary to support its equitable estoppel claim. Thus, we reject MACC's argument that the trial court abused its discretion when it denied a request to cure that defect by submitting evidence.[7]

### C. First Amendment Claim

#### 1. Basis for the Claim

MACC's fourth cause of action for violation of its First Amendment rights cites section 1983 of title 42 of the United States Code. The cause of action incorporates all the preceding paragraphs of the complaint and alleges Chapter 6 of the Municipal Code, on its face and as applied, (1) is an unconstitutional abridgement of MACC's affirmative rights of freedom of speech; (2) is an unconstitutionally overbroad restriction of expressive activity; (3) did not serve a significant governmental interest; (4) did not leave open ample alternative channels of communication; (5) is not narrowly tailored or the least restrictive means to accomplish any permissible governmental purpose; (6) is an irrational and unreasonable statute, imposing unjustifiable restrictions on the exercise of protected constitutional rights; and (7) denies MACC's free speech rights.

The relief requested at the end of the complaint includes money damages, a declaratory judgment stating that Chapter 6 of the Municipal Code is unconstitutional on its face, and a declaratory judgment stating that Chapter 6 of the Municipal Code is unconstitutional as enforced and applied.

---

**7** Based on the established rule of law about exhibits to a complaint being insufficient and the allocation of the burden to the plaintiff to establish the minimal merit of its claims, we deny MACC's oral request that this court consider the exhibits and MACC's related request that we remand to the trial court for further consideration and an explicit analysis of those documents.

In deciding MACC did not establish the minimal merits of the claim, we do not reach the defendants' argument that MACC was required to pursue a writ of administrative mandamus before seeking to recover damages or MACC's argument that it was never provided with the notice required by section 1094.6, subdivision (f).

MACC's opening brief asserts its fourth cause of action largely restates "the same facts as the first cause of action with respect to the city manager's actions and [alleges] an unconstitutional abridgement on its face, and as applied, of [MACC's] affirmative rights of freedom of speech under the U.S. Constitution."

### 2. Facial Challenge

In accordance with *Bonni*, *supra*, 11 Cal.5th 995, and *Baral*, *supra*, 1 Cal.5th 376, our analysis of what MACC has labeled its fourth cause of action for violation of its First Amendment rights considers whether it contains more than one claim for relief. In *Bonni*, the court stated there may be several claims for relief in a single pleaded cause of action. (*Bonni*, *supra*, at p. 1010.)

We conclude the fourth cause of action contains two claims for relief. The first claim is to have Chapter 6 of the Municipal Code declared unconstitutional on its face. The second claim seeks to have Chapter 6 of the Municipal Code declared unconstitutional as applied. Here, we consider the claim of facial invalidity.

As background, we note that "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." (*United States v. Salerno* (1987) 481 U.S. 739, 745 [facial challenge to federal Bail Reform Act failed].) The parties have cited, and we have located, no case that concludes a facial challenge to an ordinance, rule, regulation, or statute is based on protected activity.[8] We conclude the basis for relief is the ordinance itself, not the conduct of preparing, considering, and approving the ordinance. As a result, City and Linn had failed to carry their burden of showing the facial challenge arose from protected activity. Therefore, the second step of

---

[8] In *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, the court stated that the constitutionality of an ordinance can be a proper subject for declaratory relief and concluded the city's state court action for a declaration that a rent control ordinance was constitutional did not *arise from* an earlier federal lawsuit filed by owners of mobile home parks to challenge the ordinance. (*Id.* at p. 80.)

the anti-SLAPP analysis is not reached. MACC's facial challenge survives the anti-SLAPP motion.

### 3. As-Applied Challenge

The contents of the complaint and MACC's opening brief establish that the as-applied challenge to Chapter 6 is based on the same facts alleged in MACC's first cause of action for equitable estoppel. Consequently, we conclude the as-applied challenge arises from protected activity for the same reason that the equitable estoppel claim arises from protected activity. (See pt. II.B.2., *ante*.) The second step of the anti-SLAPP analysis is easily applied because MACC did not present any admissible evidence to support its claim that the ordinance, as applied, violated its First Amendment rights. Therefore, the as-applied claim for relief is properly stricken.

### D. Claim Based on California Constitution

MACC's sixth cause of action for violation of the California Constitution, Article I, section 2 contains two paragraphs. The first paragraph incorporates by reference the previous 150 paragraphs of the complaint. The second paragraph states: "Chapter 6 of the [Municipal] Code, on its face and as applied, violates Article I § 2 of the California Constitution."[9] MACC's opening brief summarized this claim as follows:

> "The sixth cause of action, violation of the California Constitution, Article I § 2, largely restating the same facts as the first cause of action with respect to the city manager's actions and chapter 6 of the municipal code, on its face and as applied, violates Article I § 2 of the California Constitution."

We reach the same conclusions with respect to the sixth cause of action as we reached with respect to the fourth cause of action. The facial challenge is not based on

---

[9] Subdivision (a) of section 2 of article I of the California Constitution states in full: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

protected activity and, therefore, is not subject to being stricken under the anti-SLAPP statute.

In comparison, the as-applied challenge is based on protected activity and MACC has failed to present any evidence supporting that challenge. Therefore, the as-applied claim for relief is properly stricken.

IV. ATTORNEY FEES

A. MACC's Request for Attorney Fees

MACC's opening brief requests an award of attorney fees and cost and contends:

> "If this court finds that any portion of the complaint should not have been stricken under the anti-SLAPP statute, then an award of attorney's fees to [MACC] becomes mandatory. [¶] Section 425.16, subdivision (c)(1) provides that "a prevailing plaintiff on a special motion to strike shall be entitled to recover his/her attorneys' fees and costs."

MACC's brief has not accurately described the law governing the award of attorney fees to plaintiffs. The sentence in subdivision (c)(1) of section 425.16 addressing the award of fees to a plaintiff provides in full: "*If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay*, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." (Italics added.) Under the statute, a prevailing plaintiff "can only recover fees and costs '[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay ....' " (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1018.)

Here, MACC's brief omitted the statutory condition italicized above. (See Bus. & Prof. Code, § 6068, subd. (d) [duty of attorney not to mislead a judge by a false statement of fact or law]; Cal. Rules Prof. Conduct, rule 3.3, subd. (a)(1) [duty of candor].) We find as a matter of law that the anti-SLAPP motion was not frivolous, and it was not solely intended to cause unnecessary delay because the motion was successful in

23.

eliminating the first cause of action and parts of the fourth and sixth. Thus, MACC is not entitled to attorney fees under the statute.

B.    Defendants' Attorney Fees

The February 19, 2021 "ORDER FOR JUDGMENT" stated City and Linn were prevailing parties entitled to attorney fees and costs, the amount of which would be determined in a separate motion. We vacate that portion of the order and express no opinion on whether City and Linn still qualify as prevailing parties on their partially successful motion. (See *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 784 [appellate court expressed "no opinion as to whether attorney's fees should be awarded following the partial reversal" of ruling on an anti-SLAPP motion].) That issue may be resolved by the trial court if it is raised in the further proceedings after remand.

## DISPOSITION

The judgment of dismissal is reversed, and the matter remanded to the trial court for further proceedings not inconsistent with this opinion. The order granting the special motion to strike is affirmed in part and reversed only as to MACC's claims for relief alleging the ordinance is unconstitutional on its face. The order's determination that defendants, as prevailing parties, "are entitled to attorney's fees and costs per separate motion" is vacated.

The parties shall bear their own costs on appeal.


                                                            FRANSON, J.


WE CONCUR:


LEVY, Acting P. J.


SMITH, J.

24.