Filed 3/19/24  Shawver v. State Farm General Ins. Co. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JANELLE SHAWVER, as Administrator, etc. et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> STATE FARM GENERAL INSURANCE COMPANY, <br><br> Defendant and Respondent. | B319252 <br><br> (Los Angeles County Super. Ct. No. 19STCV40797) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge.  Affirmed.

Baird Law Firm, William A. Baird; Wood Law Firm and E. Kirk Wood for Plaintiffs and Appellants.

Pacific Law Partners, Matthew F. Batezel, Jenny J. Chu, and Anne M. Master for Defendant and Respondent.

# INTRODUCTION

In November 2018 the Woolsey Fire destroyed the property where Pamela McCarthy and her nephew, Michael J. LaBerge, (Michael Jr.), lived.  McCarthy and Michael Jr. filed this action against State Farm General Insurance Company for breach of contract, breach of the implied covenant of good faith and fair dealing, and elder abuse.  McCarthy and Michael Jr. alleged State Farm did not pay the full amount it owed under a homeowner's policy State Farm issued to McCarthy and her deceased brother (and Michael Jr.'s father), Michael A. LaBerge (Michael Sr.).  The trial court granted State Farm's motion for summary judgment, and McCarthy and Michael Jr. appealed.[1]

We conclude State Farm did not breach the insurance contract because it paid to the proper insureds all (if not more than) it was obligated to pay under the coverages for repairs to the dwelling, damage to personal property, and temporary additional living expenses.  We also conclude State Farm did not breach the implied covenant of good faith and fair dealing or commit financial elder abuse.  Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Woolsey Fire Destroys the Malibu Property*

McCarthy and her brother, Michael Sr., each owned a half-interest in property in Malibu.  In February 2016 Michael Sr.

---

[1]    McCarthy died while this appeal was pending.  We granted the motion of her daughter and administrator/personal representative, Janelle Shawver, to substitute into the appeal in McCarthy's place.  (See Cal. Rules of Court, rule 8.36(a).)

transferred his half-interest to the Michael A. LaBerge Trust; he died eight months later.  In December 2017 his daughter and trustee of the trust, Chandra LaBerge Fortier, distributed the trust's assets, including the trust's half-interest in the Malibu property, to herself and to her two brothers, Michael Jr. and Jason LaBerge.

On November 10, 2018 the Woolsey Fire destroyed the property and the structures on it.  At the time, the main house on the property had four units.  Each unit had a living area, kitchen, and bathroom.  McCarthy lived in one of four units.  Two of the other units were occupied by tenants; one unit was vacant.  The property had two additional houses behind the main house.  Michael Jr. lived in one of those houses; tenants lived in the other.  Michael Jr.'s unit was 1,000 square feet and had two bedrooms and one bathroom.

> B. *McCarthy Reports the Loss to State Farm; State Farm Investigates the Claim*

State Farm insured the property under a homeowner's policy it issued to named insureds McCarthy and Michael Sr.  The policy listed the trust as an additional insured.  The policy also defined "insured" to include the named insureds' relatives who were residents of the named insured's "household."  The policy provided that, if a named insured died, State Farm would insure "the legal representative of the deceased," but "only with respect to the premises and property of the deceased covered under this policy at the time of death."  The policy included three types of coverage: (1) Coverage A, dwelling repairs; (2) Coverage B, personal property; and (3) Coverage C, additional living expense.

On November 14, 2018 McCarthy reported the loss to State Farm. State Farm issued an advance in the amount of $10,000 payable to McCarthy and "Michael LaBerge," the two named insureds. State Farm assigned the claim to its employee, Marc Forsyth. On November 16, 2018 Forsyth spoke with McCarthy. McCarthy said her niece, Fortier, would be the contact person for the claim, and McCarthy gave Forsyth her phone number. The following week, Forsyth met with Fortier and spoke with McCarthy and Michael Jr. Forsyth gave Fortier a designee letter for the named insureds to sign.[2] Forsyth explained that the contents coverage, Coverage B, only covered items of personal property owned by the insureds. Forsyth on behalf of State Farm paid a second advance of $20,000 to McCarthy and "Michael LaBerge." Forsyth began working with Fortier to find temporary housing for McCarthy and Michael Jr.[3]

On November 22, 2018 Forsyth sent McCarthy and "Michael LaBerge" a letter explaining what the policy covered and its coverage limits. Forsyth wrote: "We encourage you to

---

[2]     Initially Forsyth believed that, if the named insureds wanted Fortier to handle the claim for them, State Farm needed the named insureds to designate Fortier as their representative. But later, after Fortier showed Forsyth documents stating she was the trustee (in Forsyth's words, the "power of attorney") of the trust, which had an insured interest, State Farm management told Forsyth that, because Fortier represented the trust, State Farm did not need the signed designee letter.

[3]     Forsyth assumed the Michael LaBerge who lived on the property was the same Michael LaBerge who was a named insured. At some point Forsyth learned from Fortier that the named insured was Fortier's father and that he had died.

4

obtain your own repair estimates from contractors." Forsyth's letter enclosed personal property inventory forms, explained how to complete them, and stated: "You must provide us with all bills, receipts and related documents that substantiate your inventory."

On November 26, 2018 State Farm's adjuster, James Ulibarri, met with Fortier to inspect the property. Fortier helped Ulibarri "get a footprint layout of the home." On November 29, 2018 Forsyth left a message for Fortier stating State Farm had approved additional living expenses for two separate locations for McCarthy and Michael Jr. On December 3, 2018 Forsyth spoke with McCarthy, who was staying in a hotel. Forsyth told McCarthy that he would send an advance on the personal property benefits coverage. On December 6, 2018 Michael Jr. called and told Forsyth that he was not aware State Farm had made the second advance and that he had found a place to live. Forsyth asked Michael Jr. if everyone could meet "together so we could get all the information out and correct to everyone." Michael Jr. agreed.

On December 8, 2018 Forsyth spoke with McCarthy. He asked that she, Michael Jr., and Fortier attend the upcoming meeting "so we can have all the questions answered and everyone hears the same answers." McCarthy agreed. On December 12, 2018 Forsyth met with McCarthy and Michael Jr.; Fortier did not attend. Forsyth gave them an advance in the amount of $413,758 (50 percent of the Coverage A limit) and an additional personal property advance of $156,191 (which, combined with the previous $30,000, was 30 percent of the Coverage B limit). Forsyth asked McCarthy and Michael Jr. to give him receipts for any additional fuel, food, or temporary housing expenses.

5

C. *Conflict Among the Family Members Interferes with the Claim Process*

Later that day Fortier called Forsyth and told him that State Farm should have included the trust in the personal property advance because the trust had an interest in the structure and the contents. Forsyth stopped payment on the $156,191 check he had given McCarthy and Michael Jr. and issued a new check payable to McCarthy, "Michael LaBerge," and the trust, which he gave Fortier the next day. Fortier told Forsyth the family "may not rebuild" the structures on the property. Forsyth told McCarthy that additional living expense payments would end when the claim was complete, which he expected would be around March 1, 2019, but that the date might change if the family rebuilt. Forsyth advised McCarthy to "speak to [Michael Jr. and Fortier] on the future." McCarthy told Forsyth that Fortier would not return her calls.

On December 17, 2018 Forsyth spoke with McCarthy, Michael Jr., and Fortier. Forsyth told them that he had received conflicting information about whether they planned to rebuild and that they needed to work together to resolve the dispute. Forsyth said that he had received a receipt for temporary housing for McCarthy but that he needed a copy of Michael Jr.'s lease. Forsyth also said State Farm had agreed to pay additional living expenses through March 2019.

On February 8, 2019 Forsyth delivered the final Coverage A payment for dwelling repairs in the amount of $489,978.27, which, when combined with the $413,758 advance, represented State Farm's estimate of the cost to rebuild. The next day, Forsyth met with McCarthy. He told McCarthy that State Farm had paid Coverage A benefits to rebuild the dwelling,

6

a 30 percent advance on Coverage B, and six months' additional living expense under Coverage C.  Forsyth told McCarthy, "we have contents to work" (i.e., the family needed to submit documentation of lost personal property for Coverage B benefits).  He also said State Farm would "need to see progression on the restoration of a home on the property to continue [additional living expense] payments."  Forsyth also gave Michael Jr. a check for six months' rent.

> D.     *Unable To Obtain Documentation from the Insureds,*
> *State Farm Stops Making Payments*

By March 2019 State Farm still had not received a personal property inventory.  On March 18, 2019 Fortier told Forsyth she was still working on the inventory.  Forsyth wrote a claim file note stating the insureds had not signed an attestation regarding the value of their personal property because "they couldn't agree to meet or sign the paperwork.  Family issues prior to loss had made it impossible to work collectively on claim."  On March 26, 2019 Forsyth wrote that, due to the family rift, the family members were not speaking to each other, refused to meet with him together, and only returned his calls or contacted him when they needed assistance.  Although Forsyth had met with each family member "on several occasions to discuss contents lists and the documentation for their personal property and the contents that were on the property," Forsyth "could not get an attestation signed" or completed contents lists.

In March 2019 State Farm reassigned the claim to independent adjuster Stephanie Long.  Like Forsyth, Long received conflicting information from the family, with Fortier telling Long that the family planned to sell the property and

7

McCarthy and Michael Jr. saying that they planned to rebuild. Long asked Fortier to meet with the other members of the family to resolve the dispute.

In May 2019 Long told Fortier that State Farm had approved additional living expenses for McCarthy for six more months, which "would allow a reasonable time of 1 year to relocate." Long also told Fortier that McCarthy needed to submit documentation showing she was actively looking for permanent housing. Also in May 2019 a State Farm employee reviewed the claim file and discovered the property was listed for sale, indicating the family did not intend to rebuild. The reviewer also stated that State Farm had to provide additional living expense for only one residence, not two, and that Michael Jr., who was not a named insured, was not entitled to additional living expense beyond what State Farm had previously promised. In June 2019 Long told Michael Jr. that State Farm would not pay for his rent beyond June 2019. State Farm later agreed to pay Michael Jr.'s rent for the remainder of his one-year lease (through December 2019).

On June 12, 2019 Long sent a letter to McCarthy and Fortier as trustee stating State Farm was "prepared to advance you up to 75 % of the amount of the personal property limits" on the policy without "an inventory or documentation of your loss at this time." Long enclosed an attestation form for McCarthy and Fortier to sign stating the personal property destroyed in the fire was worth at least $465,477.75. An attorney for McCarthy returned the form with references to the trust crossed out. State Farm rejected the altered form.

State Farm continued to ask McCarthy and Fortier (on behalf of the trust) to sign the attestation letter, but McCarthy

refused.  State Farm told McCarthy and Fortier that Michael Jr.'s additional living expense benefits would end in December 2019 and that McCarthy could continue to receive additional living expense benefits for the time it took to relocate or rebuild.  State Farm asked for documentation showing either "ongoing progress towards the rebuild of the home" or a signed contract with a realtor and dates for completed home tours.  On December 3, 2019 State Farm sent letters to counsel for McCarthy and Michael Jr. and to counsel for Fortier and her brother, Jason, stating State Farm had not received documentation that McCarthy "was actively looking to purchase another home, or was moving forward with rebuilding the dwelling," and that additional living expense benefits for both McCarthy and Michael Jr. would end December 31, 2019.

E.    *McCarthy and Michael Jr. File This Action Against State Farm; The Trial Court Grants State Farm's Motion for Summary Judgment*

McCarthy filed this action on November 12, 2019.  In the operative second amended complaint, McCarthy and Michael Jr. alleged causes of action against State Farm for breach of contract, breach of the implied covenant of good faith and fair dealing, and elder abuse in violation of Welfare and Institutions Code section 15610.[4]

State Farm moved for summary judgment or, in the alternative, for summary adjudication on each cause of action and on State Farm's duties under Coverages A, B, and C.  State Farm argued Michael Jr.'s causes of action failed as a matter of

---

[4]    A second defendant, Eberl Claims Service LLC, is not a party to this appeal.

law because he was not an insured.  State Farm argued McCarthy's causes of action failed because State Farm paid her everything it owed under the policy, in light of McCarthy's failure to document her loss.  Regarding Coverage A (dwelling repairs), State Farm argued that the insureds had a duty to prove their loss by documenting the amount claimed, that State Farm had paid $763,409.43 in benefits, and that McCarthy and Michael Jr. never submitted documentation showing the cost to rebuild exceeded that amount.  Regarding Coverage B (personal property), State Farm argued that it paid $186,191 in benefits and that the insureds never submitted a list of personal property destroyed in the fire, as the policy required.  Regarding Coverage C (additional living expense), State Farm argued that it paid for temporary housing for McCarthy and for Michael Jr. through December 2019 (even though Michael Jr. was not entitled to any Coverage C benefits) and that State Farm stopped paying additional living expense benefits because the insureds did not submit proof they were rebuilding or relocating.  State Farm also moved for summary adjudication on the cause of action for breach of the implied covenant.

State Farm argued there was no evidence it wrongfully withheld benefits from an "infirm elderly person" or a "dependent adult," as required for elder abuse.  Finally, State Farm argued there was no evidence it engaged in any conduct that would justify an award of punitive damages.

In opposition to the motion, Michael Jr. argued he was an insured because he was a member of McCarthy's household. McCarthy and Michael Jr. submitted declarations by Michael Jr. and insurance loss consultant Vincent Furriel stating Michael Jr. lived "in a separate space attached to and appurtenant to the

10

insured dwelling" that "shared a continuous roof, enclosed walkway, common courtyard and living space with the dwelling." Regarding her causes of action, McCarthy argued there were questions of fact regarding whether State Farm breached the insurance contract by dealing with and paying benefits to Fortier as trustee of the trust, when State Farm knew the trust had been terminated. McCarthy and Michael Jr. also relied on Furriel's declaration stating State Farm should have paid McCarthy and Michael Jr. additional benefits under Coverages A, B, and C.

The court granted State Farm's motion for summary judgment. The court ruled Michael Jr.'s declaration did not raise a triable issue of material fact regarding his status as an insured because there was "no indication that [McCarthy and Michael Jr.] acted as a household." The court stated: "There is no indication that [Michael Jr.] helped care for . . . McCarthy." The court also stated McCarthy and Michael Jr. "obtained separate living arrangements after the fire."

The court also concluded there was no triable issue of material fact regarding whether State Farm improperly withheld benefits. Regarding Coverage A, the court ruled that Furriel's conclusory declaration lacked foundation and that McCarthy and Michael Jr. did not submit any estimates to State Farm until months after State Farm filed the motion for summary judgment in this action. The court also determined the policy required State Farm to pay Coverage A benefits to the trust as an additional insured. Regarding Coverage B, the court ruled the policy required State Farm to pay Coverage B benefits to the trustee as the legal representative for the deceased named insured, Michael Sr. The court also ruled McCarthy and Michael Jr. did not present evidence they ever submitted a proof

11

of loss to State Farm. Regarding Coverage C, the court ruled that State Farm paid additional living expenses for McCarthy and Michael Jr. for one year, that McCarthy and Michael Jr. did not show the family was making any effort to rebuild or relocate, and that State Farm was not required to cover unsubstantiated expenses.

The court also ruled State Farm was entitled to judgment as a matter of law on the causes of action for breach of the implied covenant of good faith and fair dealing and for elder abuse, as well as the claim for punitive damages. McCarthy and Michael Jr. timely appealed from the ensuing judgment.

## DISCUSSION

A. *Applicable Law and Standard of Review*

"A court may grant a motion for summary judgment only when all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Fajardo v. Dailey* (2022) 85 Cal.App.5th 221, 225, internal quotation marks omitted; see Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) "A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action." (*Regents*, at p. 618; see *Long Beach Memorial Medical Center v. Allstate Ins. Co.* (2023) 95 Cal.App.5th 710, 715; *Mattei v. Corporate Management Solutions, Inc.* (2020) 52 Cal.App.5th 116, 122.) "'Only after the defendant carries that initial burden does the burden shift to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of

12

action . . . .”’” (*Fajardo*, at pp. 225-226; see *Luebke v. Automobile Club of Southern California* (2020) 59 Cal.App.5th 694, 703.)

“‘“We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law.”’ [Citations.]  We ‘liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.’” (*Fajardo v. Dailey*, *supra*, 85 Cal.App.5th at p. 226; see *Long Beach Memorial Medical Center v. Allstate Ins. Co.*, *supra*, 95 Cal.App.5th at p. 716.)  “‘Only *admissible evidence* is liberally construed in deciding whether there is a triable issue.’” (*Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 225.)

>    B.    *The Trial Court Did Not Err in Granting*
>           *State Farm's Motion for Summary Adjudication on*
>           *the Breach of Contract Cause of Action*

The elements of a cause of action for breach of an insurance contract are (1) the existence of the contract, (2) the insureds' performance or excuse for nonperformance, (3) the insurer's breach, and (4) resulting damages.  (*Janney v. CSAA Ins. Exchange* (2021) 70 Cal.App.5th 374, 390.)  The trial court ruled that State Farm met its initial burden on summary adjudication by showing it paid all benefits it owed under the policy and that McCarthy and Michael Jr. did not raise a triable issue of material fact regarding whether State Farm improperly withheld benefits. The trial court did not err.[5]

---

[5]    Because we conclude the trial court did not err in ruling State Farm did not breach the insurance contract, we do not

13

1. *State Farm Was Entitled to Judgment on Coverage A (Dwelling Repair)*

State Farm paid $763,409.43 in Coverage A benefits for dwelling repairs and debris removal.  The policy limits were $827,516.[6]  McCarthy and Michael Jr. argue State Farm breached the insurance contract by failing to pay an additional $176,304.25.

The policy stated State Farm would pay "up to the applicable limit of liability shown in the Declarations, the reasonable and necessary cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations, the damaged part of the [covered] property."  State Farm submitted evidence it inspected the property twice, discussed the property with McCarthy and Fortier, and based on that information, prepared a 166-page estimate of the cost to rebuild.[7]  On February 8, 2019 State Farm paid that amount (less

---

reach whether Michael Jr. was insured as a member of McCarthy's household under Coverage A or B.

[6]     State Farm paid an additional $228,394.84 in other types of Coverage A benefits, such as for trees, shrubs, and landscaping, for a total of $991,804.27 under Coverage A.

[7]     McCarthy and Michael Jr. argue the estimate was inadmissible because State Farm did not authenticate it and it included hearsay.  They forfeited this argument, however, by not making these objections in the trial court.  (See Code Civ. Proc., § 437c, subd. (b)(5) ["Evidentiary objections not made at the hearing shall be deemed waived"]; *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 531-532 [to preserve evidentiary issues on appeal, a party must object in writing before the summary judgment hearing or orally at the hearing]; *Joshi v. Fitness International,*

previous advances). State Farm contended the insureds did not present any evidence the cost to rebuild exceeded the amount State Farm paid. State Farm met its initial burden on summary judgment.

In opposition to the motion, McCarthy and Michael Jr. submitted the declaration of Furriel, their insurance loss consultant, who stated State Farm owed an additional $176,304.25 for Coverage A. The trial court, however, sustained State Farm's objection to that portion of Furriel's declaration, ruling that Furriel made "no attempt to substantiate his calculations" and that his opinion "lacks foundation and is inadequate to raise a triable issue." (See *Alexander v. Scripps Memorial Hospital La Jolla, supra*, 23 Cal.App.5th at p. 225 ["'an expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based'"].) McCarthy and Michael Jr. do not challenge this ruling.[8]

---

*LLC* (2022) 80 Cal.App.5th 814, 830 [under section 437c, subdivision (b)(5), a party forfeits an evidentiary objection to a declaration by not raising it in the trial court].)

[8] In their opening brief McCarthy and Michael Jr. argue Furriel's "testimony created a fact issue," but they do not argue the trial court erred in sustaining State Farm's objection to a portion of Furriel's declaration. And in their reply brief McCarthy and Michael Jr. address State Farm's (forfeited) argument Furriel's declaration contained inadmissible hearsay, but again they do not challenge the trial court's evidentiary ruling.

In any event, even if the court erred in excluding it, Furriel's opinion did not create a triable issue of material fact on Coverage A. Furriel stated that he was an insurance loss consultant, that he inspected the property, and that he prepared reports "[b]ased principally on that inspection." His only "report" regarding Coverage A was a spreadsheet that showed a "coverage limit," "amounts paid," and a "coverage balance" of $176,304.25. Nowhere did Furriel explain how he calculated the alleged "coverage balance"; it appears he simply subtracted the amount State Farm paid from the policy's Coverage A limit.[9] But the policy did not provide State Farm had to pay the policy limit, even in the event of a total loss; as discussed, the policy required State Farm to pay "the reasonable and necessary cost to repair or replace with similar construction," up to the policy limit. And although McCarthy and Michael Jr. argued the calculations by State Farm's adjuster "were incorrect and incomplete," Furriel did not say what was wrong with State Farm's estimate or provide an alternative estimate.[10] Even under the liberal

[9]    Although Pamela and Michael Jr. assert Furriel relied on a "commonly-used software for estimating the cost of repairs and reconstruction for residential and commercial structures," Furriel's declaration says nothing about a software program or the cost to repair or rebuild.

[10]    The policy required the insureds to prove the loss by providing "specifications of any damaged building and detailed estimates for repair of the damage." McCarthy and Michael Jr. did not give State Farm an estimate of the cost to rebuild the property. (See *Abdelhamid v. Fire Ins. Exchange* (2010) 182 Cal.App.4th 990, 1000 [insurer was entitled to summary judgment where no reasonable trier of fact could find the insured

16

construction courts apply to expert declarations submitted in opposition to motions for summary judgment (see *Jennifer C. v. Los Angeles Unified School Dist.* (2008) 168 Cal.App.4th 1320, 1332), Furriel's purely conclusory opinion had no evidentiary value.  (See *Everett v. State Farm General Ins. Co.* (2008) 162 Cal.App.4th 649, 659 [contractor's estimate that stated the cost of code upgrades exceeded policy limits, but that "offered no explanation as to how and why he reached this conclusion" or "any documentation to support it," did not create a triable issue of material fact regarding a breach of contract cause of action]; *Lincoln Fountain Villas Homeowners Assn. v. State Farm Fire & Casualty Ins. Co.* (2006) 136 Cal.App.4th 999, 1009-1010 [declaration by counsel for the insured stating counsel's consultants "'prepared reports and estimates regarding the nature and cost of repair for the [insured's] earthquake damages'" in an amount three times greater than the insurer's estimate did not create a triable issue of material fact regarding the insured's entitlement to additional policy benefits]; cf. *Doe v. Good Samaritan Hospital* (2018) 23 Cal.App.5th 653, 662 [an "'opinion unsupported by reasons or explanations does not establish the absence of a material fact issue for trial, as required for summary judgment'" (italics omitted)].)  Because the undisputed material facts established State Farm paid the insureds the cost to rebuild, State Farm was entitled to judgment as a matter of law on Coverage A.  (See *Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1468 [insurer was entitled to summary judgment on a breach of contract cause of action

---

"complied with the condition of her insurance contract requiring her to provide a proof of loss with supporting documentation"].)

17

because the insurer "paid all policy benefits [the insured] was entitled to receive"].)

### 2. *State Farm Was Entitled to Judgment on Coverage B (Personal Property)*

Coverage B covered "personal property owned or used by an insured." State Farm paid an advance of $186,191, which was 30 percent of the policy limit of $620,637. McCarthy and Michael Jr. argue State Farm breached the insurance contract by paying some of the Coverage B benefits to the trust and by failing to pay "full Coverage B limits."

#### a. *State Farm Properly Paid Coverage B Proceeds to the Trustee*

As discussed, the named insureds were McCarthy and Michael Sr., who died in 2016. The policy provided that, if a named insured died, State Farm would insure "the legal representative of the deceased," but "only with respect to the premises and property of the deceased covered under this policy at the time of death." State Farm argued it properly paid Coverage B benefits jointly to McCarthy (as a named insured) and to the trustee of the trust, as legal representative of Michael Sr. (as the other named insured). The trial court ruled that this evidence met State Farm's initial burden on Coverage B and that McCarthy and Michael Jr. failed to create a triable issue of material fact.

McCarthy and Michael Jr. argue State Farm did not meet its moving burden on summary judgment because State Farm did not submit evidence Fortier, the trustee, was Michael Sr.'s legal representative. But State Farm did submit that evidence. "'The

18

term "legal representative," as used in [a fire insurance policy], means any person who, by operation of law, stands in place of and represents the insured, and includes executors, administrators, trustees, receivers, guardians, and any who stand clearly in a representative capacity.'" (*Loomis v. Vernon Mut. Fire Ins. Co.* (1961) 14 Wis.2d 470, 473; see *New York Mutual Life Ins. Co. v. Armstrong* (1886) 117 U.S. 591, 597 [6 S.Ct. 877, 879] ["The term 'legal representatives' [in an insurance policy] is not necessarily restricted to the personal representatives of one deceased, but is sufficiently broad to cover all persons who, with respect to his property, stand in his place and represent his interest, whether transferred to them by his act or by operation of law"]; *Leopold v. Leopold* (Mo.Ct.App. 1977) 552 S.W.2d 276, 278 [the "primary meaning" of the "'term "legal representative"'" in "an insurance policy is executor or administrator [citation], but the term as there found may also have a secondary meaning 'which includes anyone who succeeds to the rights of another'"]; 4 Couch on Insurance (3d ed. 2023) § 59:23 ["[a]lthough the words 'personal representatives' or 'legal representatives' are ordinarily interpreted as referring to the executor under the will of the insured or the administrator of insured's estate, those words have another or secondary meaning, which includes anyone who succeeds to the rights of another, such as heirs, next of kin, assignee by contract or operation of law, a trustee, receiver, or the like" (fn. omitted)]; see also Prob. Code, § 39 [defining "fiduciary" as a "personal representative, trustee, guardian, conservator, attorney-in-fact under a power of attorney, . . . or other legal representative"].)[11]

---

[11]    It appears Michael Sr.'s estate did not have a court-appointed executor or administrator.  At the hearing on the

19

It was undisputed Fortier was the trustee of Michael Sr.'s trust. Thus, she was the legal representative of her father, a deceased insured.

In addition, McCarthy told State Farm that Fortier would handle the claim. Fortier, in turn, told Forsyth that Michael Sr. had died, that the trust owned his interest in the property, and that she was the trustee. Fortier told Forsyth that Michael Sr.'s estate had an interest in personal property at the Malibu property. Given this information, the policy required State Farm to pay Coverage B benefits for Michael Sr.'s personal property to Fortier as Michael Sr.'s legal representative.

McCarthy and Michael Jr. argue State Farm should not have paid any proceeds to the trustee because, after the trustee distributed the trust's assets in 2017, the trust "was terminated" and "ceased to exist." They assert that, at the time of the fire, State Farm "knew that the former Trust no longer existed" but nevertheless paid benefits to the trustee, who "controlled the proceeds and withheld some of the benefits, despite not having any personal property on the insured premises."[12] But McCarthy

motion for summary judgment, counsel for McCarthy and Michael Jr. stated that there was no appointed legal representative of Michael Sr.'s estate and that "there was no probate." (See *Valentine v. Read* (1996) 50 Cal.App.4th 787, 792 ["Property held in a revocable living trust is not subject to probate administration after the settlor dies."].) McCarthy and Michael Jr. do not argue on appeal that only an executor or administrator of Michael Sr.'s estate, as opposed to a trustee of his trust, could be his legal representative.

[12] McCarthy and Michael Jr. argue it was undisputed Fortier did not have any personal property at the Malibu property. State

and Michael Jr.'s argument the trust was terminated after Fortier distributed its assets is contradicted by the terms of the trust, which stated: "After the death of [Michael Sr.], the trust may not be amended, revoked, or terminated except as specifically provided in this instrument." McCarthy and Michael Jr. did not present any evidence the trust was terminated "as specifically provided" in the trust.

McCarthy and Michael Jr. argue a letter from attorney Michael Harris stating Fortier "distributed the assets and terminated the Trust" raised a triable issue of fact regarding whether it was proper for State Farm to make payments to the trust.[13] But Harris provided no factual basis for his statement Fortier "terminated" the trust. The letter from Harris did not create a triable issue of material fact. (See *Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 415 [once the defendant meets its initial burden, the "plaintiff must produce "'*substantial*'" responsive evidence sufficient to establish a triable issue of fact"; "'responsive evidence that gives rise to no more

---

Farm, however, paid Fortier Coverage B benefits not in her individual capacity for personal property she had at the Malibu property, but as trustee for the trust and legal representative of Michael Sr., who according to Fortier had personal property there. And although McCarthy and Michael Jr. argue "the former Trust" did not have any personal property at the Malibu property, they do not argue—and did not present any evidence— Michael Sr. or his trust or estate did not have any personal property at the Malibu property at the time of the fire.

[13] State Farm argues Harris's letter contains hearsay and lacks foundation. State Farm forfeited these evidentiary objections by not making them in the trial court.

21

than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact'"].) Similarly, McCarthy's statement in her declaration (which the trial court excluded in a ruling McCarthy and Michael Jr. do not challenge in their opening brief) it was "her current understanding" that "the Trust did not have any interest in the Property" after the trustee distributed the trust's interest in the Malibu property to Michael Sr.'s children did not create a triable issue of material fact regarding whether State Farm breach the insurance contract by making payments to the trust.

But even if the Trust terminated after the trustee distributed the trust assets (see Prob. Code, § 15407, subd. (a)(2) [a trust terminates by operation of law when the trust's purpose is fulfilled]), such a circumstance would not prevent Fortier as trustee from acting as Michael Sr.'s legal representative: Fortier retained the authority to do whatever was necessary to wind up the trust. "On termination of the trust, the trustee continues to have the powers reasonably necessary under the circumstances to wind up the affairs of the trust." (Prob. Code, § 15407, subd. (b); see *Sterling v. Sterling* (2015) 242 Cal.App.4th 185, 200 [trustee of a revoked trust had the power to sell a major asset as part of the winding up process]; Rest.3d Trusts, § 89, com. b, p. 271 ["Although the termination date for a trust has arrived, the trustee does not thereby necessarily cease to be trustee but normally continues to serve until the trust is finally wound up."].) Once State Farm paid policy proceeds that belonged in part to Michael Sr., his share of the proceeds became part of the trust

estate, and Fortier had the duty as trustee to distribute the proceeds to the trust beneficiaries.[14]

              b. *There Was No Evidence the Insureds' Personal Property Loss Exceeded What State Farm Paid*

As discussed, State Farm paid an advance of $186,191 in Coverage B benefits for personal property (30 percent of the policy limit of $620,637). The policy required the insureds to submit within 60 days "an inventory of damaged . . . property," showing "in detail the quantity, description, age, replacement cost and amount of loss." In its motion for summary judgment, State Farm argued the insureds never submitted a personal property inventory or proof of loss demonstrating that the value of their lost personal property exceeded the amount State Farm paid.

McCarthy and Michael Jr. argue the trial court erred in ruling State Farm met its initial burden on summary judgment because State Farm did not submit any evidence they failed to submit a list of personal property. But State Farm did. State Farm submitted excerpts from its claim file showing State Farm repeatedly asked McCarthy, Michael Jr., and Fortier to submit lists of personal property destroyed in the fire. Two weeks after

---

[14] To the extent Fortier distributed the proceeds inequitably, as McCarthy and Michael Jr. assert, they may have a cause of action against Fortier for breach of fiduciary duty, but they do not have a claim against State Farm. Indeed, there has been litigation among the family members. (See *Fortier et al. v. LaBerge et al.* (Super. Ct. L.A. County, No. 19SMCV01483.)

23

the fire, Forsyth sent the family personal property inventory forms and explained how to complete the forms or provide an inventory online. In March 2019 Forsyth wrote a claim file note stating that he had met with each family member several times "to discuss contents lists and the documentation for their personal property," but that he had not yet received the lists. In June 2019 State Farm offered to advance 75 percent of the personal property limits without an inventory if McCarthy and Fortier would sign an attestation stating their destroyed personal property was worth at least $465,477.75. But McCarthy would not sign.

McCarthy and Michael Jr. argue they submitted the required personal property inventory and created a triable issue of fact by submitting a "personal property report" prepared by their expert, Furriel. Counsel for McCarthy and Michael Jr. sent Furriel's personal property report to State Farm in January 2022. The trial court found that report, sent months after State Farm filed its motion for summary judgment, did not satisfy the proof of loss requirement, contained unsubstantiated calculations, and did not raise a triable issue of material fact regarding State Farm's payment of Coverage B benefits. The trial court was correct. Furriel's declaration did not say how he obtained information about McCarthy's and Michael Jr.'s lost property or how he calculated its replacement cost. And the trial court excluded the paragraph of Furriel's declaration that stated State Farm owed an additional $595,772.43 for Coverage B benefits, a ruling McCarthy and Michael Jr. do not challenge.[15]

---

[15]  Although Furriel did not explain the basis for the amounts on his spreadsheet, it appears he calculated the policy limit for Coverage B as 75 percent of the limit for Coverage A, plus an

24

In addition, McCarthy and Michael Jr. did not provide Furriel's personal property report to substantiate their claim, as State Farm requested and as the policy required. Instead, it appears Furriel prepared his report for the purpose of opposing State Farm's motion for summary judgment; counsel for McCarthy and Michael Jr. sent the report to State Farm in January 2022, two days before filing the opposition to State Farm's motion. McCarthy and Michael Jr. argue that State Farm "was plainly not injured by any delay in an inventory" because in June 2019 (seven months after the fire) State Farm offered to pay 75 percent of Coverage B policy limits without an inventory and gave the insureds 36 months from the date of the payment to replace the property and submit the documentation required to receive the replacement cost.[16] McCarthy and

additional amount for inflation, for a total amount of $625,772.43. The Coverage B policy limit, however, was $620,637.

[16] The policy required State Farm to pay "the cost to repair or replace less depreciation" (actual cash value) until the insured replaced the property, at which time State Farm would pay full replacement cost. The policy gave the insured two years to replace the property and receive full replacement cost; Insurance Code section 2051.5, former subdivision (b)(1)(A)(ii), now subdivision (b)(1)(B), extended that period to three years for a loss relating to a state of emergency. Neither the policy nor section 2051.5 allowed an insured up to three years to submit proof of loss; in fact, as discussed, the policy required the insured to submit an inventory of damaged personal property within 60 days. Undesignated statutory references are to the Insurance Code.

Michael Jr. contend State Farm's offer was evidence it "did not expect to be provided the full estimate immediately." But McCarthy and Michael Jr. provide no authority for their contention State Farm was required to accept as proof of loss a personal property inventory submitted by insureds in opposition to an insurer's motion for summary judgment, more than three years after the loss. Belatedly complying with policy terms only after suing the insurance company and receiving a motion for summary judgment does not reflect true compliance.

3. *State Farm Was Entitled to Judgment on Coverage C (Additional Living Expenses)*

Coverage C covered "the necessary increase in cost" to maintain the named insured's standard of living "for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months." State Farm paid $130,874.56 in Coverage C benefits for McCarthy's hotel and Michael Jr.'s rental property through December 31, 2019.[17] The trial court ruled State Farm met its initial burden on summary judgment regarding Coverage C by presenting evidence "the reasonably necessary time for repairs or relocation had passed, considering the lack of documentation from [McCarthy and Michael Jr.] indicating any efforts to rebuild or relocate." The trial court also ruled that,

---

[17] Because Michael Jr. was not a named insured, he was not entitled to any additional living expenses. It appears State Farm initially paid Michael Jr.'s expenses by mistake (assuming he was Michael Sr., the named insured), but nevertheless ultimately decided to pay the rent for the entirety of his one-year lease.

26

because McCarthy and Michael Jr. did not present evidence they had incurred additional rental expenses after December 31, 2019, there was no triable issue of material fact regarding whether State Farm breached the policy by withholding Coverage C benefits.

McCarthy and Michael Jr. argue section 2051.5, former subdivision (b)(2),[18] required State Farm to pay additional living expenses for up to three years. Former subdivision (b)(2), provided that, in the event of a covered loss relating to a state of emergency (such as the Woolsey Fire), an insurer must cover additional living expenses for at least 24 months, "subject to other policy provisions," and for up to 36 months "if an insured acting in good faith and with reasonable diligence encounters a delay or delays in the reconstruction process that are the result of circumstances beyond the control of the insured."

McCarthy and Michael Jr. argue the lawsuit Fortier and her brother Jason filed against them in August 2019 prevented them from rebuilding and required State Farm to pay their additional living expenses for three years under section 2051.5, former subdivision (b)(2). McCarthy and Michael Jr. misconstrue the statute. First, former subdivision (b)(2), stated that an insurer's obligation to pay additional living expenses for an extended period is subject to other policy provisions. And State Farm's policy required it to pay additional living expenses for the time required to rebuild, to relocate, or for two years, whichever

[18]    Section 2051.5, former subdivision (b)(2), was effective from September 21, 2018 to December 31, 2020. The Legislature amended section 2051.5 and deleted former subdivision (b)(2), but added similar language to section 2060, subdivision (b)(1), operative July 1, 2021 (Stats. 2020, ch. 258, § 5 and ch. 261, § 1.)

27

was shortest.  Former subdivision (b)(2) of section 2051.5 extended the two-year period to three years, but it did not require State Farm to pay additional living expenses for longer than the time required to rebuild or relocate.  State Farm presented evidence that it asked the insureds for documentation showing they were working with an architect, engineer, or contractor to rebuild or with a realtor to relocate and that the insureds did not provide any.  McCarthy and Michael Jr. did not submit evidence to create a triable issue of material fact regarding the application of this provision.

Second, the delay caused by the intrafamily litigation was not a circumstance beyond the insured's control, within the meaning of section 2051.5, former subdivision (b)(2).  The statute states:  "Circumstances beyond the control of the insured include, but are not limited to, unavoidable construction permit delays, lack of necessary construction materials, and lack of available contractors to perform the necessary work."  Litigation among property owners is not this kind of circumstance.  The statute's legislative history reflects that the Legislature was concerned that, given the number of wildfires in California in recent years, the construction industry was "struggling to keep up with construction demand," causing "reconstruction delays due to the massive need for debris removal, permitting demand and lack of contractors and materials."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1772 (2017-2018 Reg. Sess.) as amended Aug. 24, 2018.)  McCarthy and Michael Jr. offer no reason insureds who cannot agree whether to rebuild or relocate—including those who resort to litigation to settle their differences—should benefit from a statutory

28

extension of time designed to address allocation of, or competition for, scarce resources in times of natural disasters.

C.    *The Trial Court Did Not Err in Granting State Farm's Motion for Summary Adjudication on the Causes of Action for Breach of the Implied Covenant and for Elder Abuse*

McCarthy and Michael Jr.'s cause of action for breach of the implied covenant of good faith and fair dealing is predicated on their cause of action for breach of contract.  Because State Farm was entitled to summary adjudication on McCarthy and Michael Jr.'s cause of action for breach of contract, State Farm was also entitled to summary adjudication on their cause of action for breach of the implied covenant of good faith and fair dealing.  (See *Bennett v. Ohio National Life Assurance Corp.* (2023) 92 Cal.App.5th 723, 729 ["""[A]bsent an actual withholding of benefits due, there is no breach of contract and likewise no breach of the insurer's implied covenant."""]; *Caldera Pharmaceuticals, Inc. v. Regents of University of California* (2012) 205 Cal.App.4th 338, 359, fn. 17 ["where there is no breach of the contract, there can be no breach of the covenant implied in that contract"]; *Behnke v. State Farm General Ins. Co.*, *supra*, 196 Cal.App.4th at p. 1470 [cause of action for bad faith denial of insurance benefits fails as a matter of law where the insured cannot establish a breach of contract].)

McCarthy's cause of action for elder abuse failed as well. Financial abuse of an elder occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder" for "a wrongful use or with intent to defraud, or both."  (Welf. & Inst. Code, § 15610.30,

29

subd. (a)(1).)  "[T]o establish a 'wrongful use' of property to which an elder has a contract right, the elder must demonstrate a breach of the contract, or other improper conduct."  (*Paslay v. State Farm General Ins. Co.* (2016) 248 Cal.App.4th 639, 657.)  The elder must prove the party breaching the contract "knew or should have known [its] conduct is likely to be harmful to the elder."  (Welf. & Inst. Code, § 15610.30, subd. (b); *Paslay*, at p. 658.)  Because State Farm did not breach the insurance contract, there was no wrongful use of McCarthy's property.  (See *Pitt v. Metropolitan Tower Life Ins. Co.* (S.D.Cal., June 5, 2023, No. 20-CV-694-RSH-DEB) ___ F.Supp.3d ___, ___ [2023 WL 3879587, p. 8] [no wrongful conduct under Welf. & Inst. Code, § 15610.30 where there was no breach of the insurance contract].)  State Farm was entitled to judgment as a matter of law on McCarthy's cause of action for elder abuse.

## DISPOSITION

The judgment is affirmed.  State Farm is to recover its costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.                    RAPHAEL, J.*

---

* Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.